Joseph N. GRANO, Jr., et al.

v.

Marion S. BARRY, Mayor, District of Columbia, et al., Appellants,

Oliver T. Carr, Jr., et al.

No. 85–5264.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 3, 1986.

Decided Feb. 21, 1986.

Richard B. Nettler, Asst. Corp. Counsel, with whom John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on brief for appellants.

Richard A. Green, with whom William Joseph H. Smith and William J. Utermohlen were on brief for intervenor-appellees.

William A. Dobrovir, with whom David L. Sobel was on brief for appellees.

Before WALD, MIKVA and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

The District of Columbia ("District") appeals from the District Court's award of attorneys' fees under 42 U.S.C. § 1988 to plaintiffs who successfully sought an injunction prohibiting the demolition of the Rhodes Tavern prior to a scheduled referendum dealing with the future of the tavern. The District urges several grounds for reversal: (a) because the referendum was eventually held unconstitutional by the Superior Court of the District of Columbia, and because the tavern was eventually razed, the plaintiffs were not "prevailing parties" under the statute; (b) since the constitutional claim on which the plaintiffs won the injunction was itself frivolous, no award of fees was justified; (c) even if the claim on which the plaintiffs prevailed was colorable, the District Court should have found that exceptional circumstances in this case precluded an award of fees; (d) the District Court erred in not requiring

the intervenors in the suit to share in the payment of fees; and (e) the District Court erred in calculating the fees at $53,579.47. We address each of these claims individually, and in so doing affirm much of the District Court's rationale. We do, however, ultimately remand for consideration of the "special circumstances" issue, and, if fees are awarded, reconsideration of some items involved in their calculation.

## I. BACKGROUND

### A. *Preliminary Rounds*

After holding public hearings on the issue, the District, on February 11, 1980, ordered the issuance of demolition permits allowing the Oliver T. Carr Company to raze the Rhodes Tavern in order to construct a large office and retail store complex. Plaintiffs, a group of citizens interested in preserving the historic Rhodes Tavern, failed in their local court challenge to the issuance of the permits. *Citizens Committee to Save Historic Rhodes Tavern v. District of Columbia Department of Housing and Community Development*, 432 A.2d 710 (D.C.), *cert. denied*, 454 U.S. 1054, 102 S.Ct. 599, 70 L.Ed.2d 590 (1981).

Having lost their battle before the District of Columbia courts, the plaintiffs decided to take their issue to the people. In August, 1982, the District of Columbia Board of Elections and Ethics approved the subject matter of an initiative dealing with the preservation of Rhodes Tavern,[1] and in February, 1983, plaintiffs submitted the requisite number of signatures to allow the initiative to appear on the ballot in the November 8, 1983, general election.

Although the District of Columbia Court of Appeals had affirmed the issuance of the demolition permit in May, 1981, Carr could not actually obtain the permit until it met a number of conditions precedent.

---

1. The initiative declared it to be the public policy of the District of Columbia "to support, advocate and promote the preservation, restoration and reuse of Rhodes Tavern on its present site...." The initiative specifically mandated the creation of an advisory board to negotiate with Carr for the building's preservation. If the

negotiations failed, the board would be required to report to the Mayor on possible means of preserving the tavern. The Board would be further obligated to apply for Category I Landmark status for the building, which would require its preservation. D.C.Code §§ 5–1021–1023 (1985 cum.supp.).

These included obtaining an exception from the District of Columbia Board of Zoning Adjustment ("BZA"). In May, 1983, the BZA voted to grant Carr's exception, effective as of August 12, 1983.

### B. *Litigation on the Merits*

#### 1. *Federal Courts*

Realizing that Carr's fulfillment of the conditions precedent to a demolition permit threatened to transform the Rhodes Tavern initiative into a post-demolition eulogy, plaintiffs brought a class action suit in the United States District Court for the District of Columbia on behalf of all registered voters who had signed the petition to have the initiative on the ballot. Plaintiffs sought a temporary restraining order, and a two-stage injunction against the District's issuance of the permit. First, they sought injunctive relief *pending the election,* arguing that if the demolition were to occur sooner, the citizenry would be deprived of its right to an effective vote on a matter that had already been deemed a proper subject of an initiative. Second, they asked the court to extend the injunction so that if the initiative passed, the District would be prohibited from issuing the permit *until the procedures contemplated by the initiative were satisfied.*

The District Court allowed Oliver T. Carr, Jr. and George H. Beuchert, Jr., trustees of the property in question, to intervene in the suit, and after full briefing and oral argument by all parties, granted summary judgment for the plaintiffs. The court enjoined the District

> from issuing a demolition permit ... (1) until after the November 8, 1983 elections ... and the certification of the result of the vote on Initiative No. 11; and if the majority of the voters vote YES on Initiative No. 11 and it is enacted as the law of the District of Columbia, then (2) until the procedures contemplated in Initiative No. 11 for the preservation of the Rhodes Tavern are concluded.

*Grano v. Barry,* Civ. Action No. 83–2225 (D.D.C. Sept. 1, 1983). In its Memorandum Opinion, the District Court explained its decision as based on the District's citizens' "right to vote effectively," mem. op. at 7, and the "unquestioned right to petition their government to redress what they believe are grievances," *id.* at 8 (citations omitted). Although the District and intervenors had argued that the initiative was invalid under local law and unconstitutional as a taking of Carr's property, the District Court accepted the plaintiffs' argument that "[n]either the validity nor the constitutionality of the initiative ... may properly be resolved by this court. Those issues will be ripe for adjudication only if the initiative in fact passes and becomes law." *Id.* at 10.

The District and Carr immediately appealed to this court and twice asked for expedited consideration and summary reversal. The plaintiffs objected, and a motions panel of this court denied the two sets of motions for summary reversal and expedition on October 21, 1983, and on October 28, 1984, respectively.

On November 8, 1983, the voters of the District of Columbia passed Initiative No. 11 by a vote of 22,997 for and 15,420 against. These results were certified and sent to Congress for its statutory review under D.C.Code § 1–233(c)(1) (1981). Since Congress took no action, Initiative No. 11 became law on March 15, 1984. D.C. Law 5–69, *codified as* D.C.Code §§ 5–1021–1023 (1985 cum.supp.).

In its May 4, 1984, decision on appeal, this court first held that the propriety of the District Court's pre-election injunction was now a moot issue since the election had already taken place. *Grano v. Barry,* 733 F.2d 164, 167–68 (D.C.Cir.1984). As for the post-election injunction, we reversed the District Court, finding that the post-election injunction had no basis in federal law. Any possible claims to support such an injunction under local law, we held, must be addressed to the District of Columbia—not the federal—courts. *Id.* at 168–69.

#### 2. *The Local Courts*

With no injunction barring the demolition any longer, plaintiffs filed a new action in

the Superior Court of the District of Columbia. On August 20, 1984, that court granted the District's and intervenors' motions for summary judgment, and held that Initiative No. 11, on its face, constituted an unconstitutional taking. *Citizens Committee to Save Historic Rhodes Tavern v. Barry*, Civ. Action No. 6833–34 (D.C. Sup.Ct. Aug. 20, 1984). On August 30, the District of Columbia Court of Appeals stayed the Superior Court's order, conditioned upon plaintiffs' posting $100,000 bond by September 6, 1984. Plaintiffs were unable to raise that amount by that date, and the stay was therefore vacated. The court refused to reinstate the stay when, on September 10, plaintiffs proffered the bond, and on that same day the District issued Carr a demolition permit and the tavern was demolished. Grano's appeal of the Superior Court's order was subsequently dismissed as moot.

## C. *The Attorneys' Fees Litigation*

During the pendency of the appeal from the District Court's decision in this court, plaintiffs moved the District Court for attorneys' fees against the District and the intervenors. Although the request for attorneys' fees was filed on November 21, 1983—before this court ruled on the appeal and before the Superior Court invalidated the initiative—the District Court did not rule on the motion until February 13, 1985, after the final curtain had been drawn on the Rhodes Tavern. The plaintiffs' amended petitions, accordingly, did not ask for fees associated with the post-election injunction.

The District Court held that plaintiffs were entitled to attorneys' fees for work on the pre-election injunction, but that the fees should be assessed against the District alone—not against the intervenors. *Grano v. Barry*, Civ. Action No. 83–2225, Mem. Op. at 4 (D.D.C. Feb. 13, 1985), *reprinted in* Joint Appendix ("J.A.") at 11–13. As for work associated with the constitutional validity of the initiative, however, the court denied fees, holding that the local court's disposition made it clear that plaintiffs

were not prevailing parties on that issue. J.A. at 13–14. Since those noncompensable efforts amounted to 9% of the overall merits fees, the court also reduced 9% from the time plaintiffs had devoted to their efforts to secure attorneys' fees. In addition, the court made a small reduction in compensable costs, reducing the copying costs by 25%. Given these rulings, the court discounted the award of fees and costs from the $59,112.82 that plaintiffs had requested to $53,579.47. J.A. at 14–16. The plaintiffs have not appealed from these adjustments. As previously noted, however, the District does appeal the award on five distinct grounds.

## II. DISCUSSION

### A. *The "Prevailing Party" Requirement*

Under 42 U.S.C. § 1988, "the District Court must award attorney fees to the prevailing party in civil rights litigation unless special circumstances would render such an award unjust." *See Miller v. Staats*, 706 F.2d 336, 340 (D.C.Cir.1983), and cases cited therein. While it is obvious that a party who succeeds in obtaining a favorable final judgment following a full trial on the merits and exhaustion of all appeals is a prevailing party, it is also clear that a party may be considered to have prevailed even when the legal action stops short of final appellate, or even initial, judgment due to a settlement or intervening mootness. *See Commissioners Court of Medina County, Texas v. United States (Medina)*, 683 F.2d 435, 440–41 (D.C.Cir. 1982), and cases cited therein. In such cases, however, it is often more difficult to ascertain whether the party has indeed prevailed or not.

To qualify as a prevailing party for attorneys' fees purposes, a plaintiff must show that the " 'final result represents in a real sense, a disposition that furthers their interest.' " *Miller*, 706 F.2d at 341 (D.C.Cir.1983) (quoting *Medina*, 683 F.2d at 441). In applying this inquiry, the court must "focus on the precise factual/legal condition that the fee claimant has sought to change, and then determine if the outcome confers an actual benefit or

relief from a burden." *Miller*, 706 F.2d at 341 n. 30. Of course, it is not necessary that the plaintiff have prevailed on every claim or achieved all of the benefits he might have hoped for in the litigation. While partial versus complete success is a consideration in assessing the amount of fees, the critical question in evaluating the availability of fees "is whether fee claimants have received any benefit at all." *Id.* (quoting *Medina*, 683 F.2d at 441).

We agree with the District Court that these plaintiffs clearly obtained a significant benefit when they succeeded in ensuring that the voting would take place while the Rhodes Tavern still stood and the initiative still had the *potential* to mean something. Throughout the proceedings, plaintiffs understood that the initiative might eventually be deemed invalid. But they also understood that unless they were successful in obtaining a pre-election injunction, the initiative would become worthless since it would have *absolutely no chance* of meaning anything. As the plaintiffs explained early in the proceeding: they did not "seek to have [the] court 'enact' the initiative. [Their] action s[ought] ... to preserve the *status quo* for a matter of 11 weeks—until the voters have the opportunity to express their will on the question of the historic preservation of Rhodes Tavern." Plaintiffs' Opposition to Motion of Intervenors for Summary Judgment and Declaratory Relief at 2, *Grano v. Barry*, Civ. Action No. 83–2225 (D.D.C. 1983). Plaintiffs faced two hurdles. They successfully surmounted the first by holding off the demolition until the election. Although their goal of ensuring that the result of the election would have legal effect was subsequently blocked in another court, they nonetheless succeeded in the aspect of their claims that brought them into federal court under section 1983.

This case is consequently different from the line of cases holding that no fees are available for mere procedural victories. *See, e.g., Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). In *Hanrahan*, the Supreme Court held that appellate reversal of a directed verdict, did not, in and of itself, constitute substantial success. The Court explained that "Congress intended to permit the interim award of counsel fees only when a party has *prevailed on the merits* of at least some of his claims." *Id.* at 758, 100 S.Ct. at 1989 (emphasis added). In the case before us, the plaintiffs' success before the District Court was clearly "on the merits". The parties cross-motioned for summary judgment and the District Court's ruling in favor of the plaintiffs was based on its recognition of a constitutional right to vote in a pending initiative.[2] The mootness of the subsequent appeal of that holding following the actual election and the passage of the initiative, emphasizes, rather than detracts from, the practical substance of their victory.

Indeed, in holding that the pre-election issue was moot, this court explained that: "[O]f course, our dismissal of this part of the appeal as moot is not dispositive as to the issue of attorneys' fees.... *See Williams v. Alioto*, 625 F.2d 845 (9th Cir. 1980)." *Grano v. Barry*, 733 F.2d 164, 168 n. 2 (D.C.Cir.1984). *See generally Doe v. Marshall*, 622 F.2d 118, 120 (5th Cir.1980) ("determination of mootness does not prevent an award of attorneys' fees on remand"), *cert. denied*, 451 U.S. 993, 101 S.Ct. 2336, 68 L.Ed.2d 855 (1981); Comment, *Civil Rights Attorneys' Fees Award in Moot Cases*, 49 U.Chi.L.Rev. 819, 831–38 (1982) (discussing criteria used in awards in moot cases).

In "procedural victory" cases such as *Hanrahan*, the party is held not to have prevailed because his litigation goals are clearly not satisfied by the procedural victory. For example, when an appellate court rules that a trial on an issue must be held, the plaintiffs have not prevailed;

---

**2.** That the constitutional issue was decided on the merits also distinguishes this case from the decision in *Bly v. McLeod*, 605 F.2d 134 (4th Cir.1979), *cert. denied*, 445 U.S. 928, 100 S.Ct.

1315, 63 L.Ed.2d 761 (1980). There, the plaintiffs had obtained only a *temporary restraining order* which, the court stressed, was "in no way a determination on the merits." *Id.* at 137.

"[a]s a practical matter they are in a position no different from that they would have occupied if they had simply defeated the defendants' motion for a directed verdict in the trial court." *Hanrahan*, 446 U.S. at 758–59, 100 S.Ct. at 1989–90. In such cases the procedural victory relates only to the litigation process, and the plaintiffs have not prevailed on what they *originally* came into court for. Here, by contrast, the victory represented a substantial part of what plaintiffs asked the court for in the first place. The District Court's ruling had the distinct external effect of postponing the razing of the tavern until the election could be held. Such a victory is in no way "procedural." *See Massachusetts Fair Share v. Law Enforcement Assistance Administration*, 776 F.2d 1066, 1068–69 (D.C. Cir.1985) (plaintiffs who obtained court order that two agencies—instead of one—had to make decision on grant were prevailing parties: "this is precisely the point that [plaintiffs] litigated, and won"); *Bagby v. Beal*, 606 F.2d 411, 415 (3d Cir.1979) (fired plaintiff who succeeded in obtaining court order recognizing her due process right to administrative hearing was a prevailing party even though the hearing eventually affirmed the firing).

### B. *Nonfrivolousness of Claims*

When a party's success in achieving his goal results from a settlement, or some other event occurring before there has been a judicial ruling on the merits of the civil rights claims, it is necessary under the attorneys' fees provision of section 1988 to determine whether there were colorable civil rights claims involved in the case and whether they served as catalysts in securing the result. In carrying out this inquiry, courts assess the legal claims advanced by the plaintiff to ensure that they are not "frivolous, unreasonable, or groundless." *Nadeau v. Helgemoe*, 581 F.2d 275, 281 (1st Cir.1978); *see also Miller*, 706 F.2d at 341 n. 31 (adopting *Nadeau* test). If so, fees are unavailable for two reasons. First, if the claims are frivolous it is assumed that the defendants "acted gratuitously," and that the claims could not

have been catalysts to the settlement or relief. *Nadeau*, 581 F.2d at 281. Second, it has been suggested that "unless an action brought by a private litigant contains some basis in law for the benefits ultimately received by that litigant, the litigant cannot be said to have 'enforced' the civil rights laws or to have promoted their policies for the benefit of the public at large." *Long v. Bonnes*, 455 U.S. 961, 967, 102 S.Ct. 1476, 1479, 71 L.Ed.2d 681 (1982) (Rehnquist & O'Connor, JJ., dissenting from the denial of certiorari). The District argues that since there was never a final appellate ruling on the merits of the pre-election injunction, the "frivolous" test should be applied, and that the constitutional claims advanced in this case do not pass muster.

This argument is based on a misconception about the function of the frivolousness test. The inquiry is not to be applied whenever some factor makes appellate review unavailable. The test applies only when there has never been any *judicial* determination whatsoever on the merits. In the context of a case settled or mooted prior to any judicial determination, the two questions of causation and colorability need to be answered, and the frivolousness test answers them. But when the party has prevailed as a direct result of a district court order accepting his civil rights claims on their merits, the issues of causation and colorability are clear, and the frivolousness test serves no purpose. *Cf. Williams v. Alioto*, 625 F.2d 845, 847–48 (9th Cir.1980) (awarding fees in mooted case without inquiring into merits of claims since "appellees did obtain a judicial determination that appellants had acted unconstitutionally"), *cert. denied*, 450 U.S. 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981); *Bagby v. Beal*, 606 F.2d 411, 414–15 (3d Cir. 1979) (not inquiring into merits of claim where district court had already ruled in favor of fee claimant in now mooted case).

As for the causation element, if the relief gained from the suit is the direct result of a district court's ruling, there can be no doubt about what caused the relief; a de-

fendant acting in accordance with a court order cannot be presumed to be acting gratuitously.

Similarly, the colorability inquiry, which asks whether the party in fact prevailed because of "civil rights" claims, makes little sense when a district court has formulated its order on the basis of those very civil rights claims. The test was developed for use when, because of some intervening factor, there has been no judicial determination that the claims are at all related to the civil rights laws. In such a case, the court does not simply accept the fact that the plaintiff labelled the claims as civil rights claims in his complaint, but rather looks at the claims to ensure that they are colorable civil rights claims. Even in that circumstance, the test is an extremely lenient one. *See Miller*, 706 F.2d at 341 n. 31 (standard to be applied "duplicates the threshold test for federal matter jurisdiction" as laid out in *Hagans v. Lavine*, 415 U.S. 528, 536–43, 94 S.Ct. 1372, 1378–82, 39 L.Ed.2d 577 (1974)). But once a court has already ruled that the claims are actionable—not just colorable—civil rights claims, the question of whether the party meets the statutory requirement of having prevailed on the basis of "civil rights" claims has been unequivocally answered.

## C. *Exceptional Circumstances*

Once a claimant is found eligible for attorneys' fees, the only remaining question is whether special circumstances exist that would render such an award unjust. *See Medina*, 683 F.2d at 438; S.Rep. No. 295, 94th Cong., 1st Sess. 40 (1974), *reprinted in* U.S.Code Cong. & Admin.News 1975, p. 774. In *Medina*, this court explained that:

in the exercise of its discretionary function to determine whether an award of fees is just under the circumstances of this case, the court should consider whether the net result is [such] . . . that

it would be stretching the imagination to consider the result a "victory" in the sense of vindicating the rights of the fee claimants. If the victory can fairly be said to be only a pyrrhic one, then an award of fees would presumably be inappropriate.

*Medina*, 683 F.2d at 442–43.

In this case, the District strenuously argued before the District Court that the facts came within the "pyrrhic victory" rubric, and asked the court to use its discretion to deny fees on that basis. *See, e.g.,* Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees at 2–11. *Grano v. Barry*, Civ. Action No. 83–2225 (D.D.C. 1984) (arguing that special circumstances relating to "nature of the controversy" and "limited nature of the relief granted" justified denial of fees); Intervenors' Opposition to Plaintiffs' Motion for Attorneys' Fees at 10–18, *Grano v. Barry*, Civ. Action No. 83–2225 (D.D.C.1984) (arguing that nature of the "state action," and nature of the relief justified denial of fees).

Apart from the unusual circumstance that the vote on the Rhodes Tavern initiative was ultimately declared unconstitutional, the District has also stressed its uniquely frustrating position in the litigation: it had no choice under District law but to issue the demolition permit once the conditions precedent were fulfilled. No matter which course it followed—granting or withholding the permit—either the plaintiffs or Carr would have claimed it was acting unconstitutionally. In such a squeeze play, it argued, it would not be equitable to assess attorneys' fees against it. Finally, the District and intervenors argued that the Superior Court's holding that the initiative violated a *third party's* constitutional rights, certainly constituted special circumstances.

Although the District focused much of its argument on the exceptional circumstances doctrine,[3] the District Court never specifically responded to that issue,

---

3. For a discussion of some of the factors that we have included in this inquiry to date, see *Miller,*

706 F.2d at 342–43; *Medina*, 683 F.2d at 442–44.

and certainly never provided any reasoned explanation for its implicit rejection of the argument. In *Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980) (en banc), this court explained that meaningful review of district court awards of attorneys' fees requires a statement of reasons which we can evaluate, and indicated that in some cases it is necessary to remand to the district court for adequate articulation of its reasoning. *Id.* at 901 n. 39. Indeed, the Supreme Court has instructed in the context of adjustments to fees, that when adjustments are "requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the *district court should make clear* that it has considered the relationship between the amount of the fee awarded and the results obtained." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983) (emphasis added). We find that this requirement is no less applicable where the contested issue is the presence of special circumstances. *Cf. Medina,* 683 F.2d at 444 (instructing district court to provide "statement of reasons" if it finds that exceptional circumstances would make an award of fees unjust). We therefore remand to the District Court, which has "superior understanding of [this] litigation," *id.,* to pass on this issue.

Our holding today does not mean that district courts have an affirmative duty in each and every case to set forth reasoning on the special circumstances issue. But in a case where a major part of the defendant's argument focuses on that issue, a district court should set forth its reasoning for concluding that special circumstances do not exist.

### D. *Exclusion of Intervenor*

The District Court recognized that it had the right to assess fees against the intervenors as well as the District, but deemed it inappropriate to do so. The court explained that "[i]n one sense, the intervenors' posture in this action was similar to that of plaintiffs, in that both intervenors and plaintiffs were involved in this litiga-

tion to protect their rights under the Constitution." J.A. at 4. We cannot say that the District Court abused its discretion in excluding Carr under these circumstances. *See Kirkland v. New York State Department of Correctional Services,* 524 F.Supp. 1214 (S.D.N.Y.1981) (recognizing special status of parties who intervene to protect their own constitutional rights); *cf. Sierra Club v. Environmental Protection Agency,* 769 F.2d 796, 810 (D.C.Cir.1985) (discussing general reluctance to assess fees against intervenors under different statute).

### E. *Calculation of Fees*

Finally, the District argues that even if fees should have been awarded, the District Court erred in its calculation of the appropriate fees. The Supreme Court has instructed that in assessing fees a district court should take cognizance of the reasonableness of fees as related to the degree of success obtained, and should, if feasible, exclude fees associated with claims upon which the party did not succeed, and which are not integrally related to the claims that the party prevailed upon. *See Hensley v. Eckerhart,* 461 U.S. 424, 434–37, 103 S.Ct. 1933, 1939–41, 76 L.Ed.2d 40 (1983). In laying out the test, the Court emphasized that "there is no precise rule or formula in making these determinations" and that the district court "necessarily has discretion" in this area. *Id.* at 436–37, 103 S.Ct. at 1941–42. With this framework in mind we proceed to the individual objections raised by the District.

#### 1. *The Issues That Plaintiffs Prevailed Upon*

The District Court apparently accepted the District's and intervenors' argument that plaintiffs should not be compensated for time spent arguing the validity of the initiative under local and constitutional law. While plaintiffs had urged that the validity-related issues would not become ripe until after the election, the District Court explained that:

Even if plaintiffs can be deemed to have prevailed on the basis of this narrow holding, the ultimate decision of the District of Columbia courts that the initiative was invalid as a violation of the constitutional rights of the intervenors precludes a finding that plaintiffs were the "prevailing party" on this issue in any meaningful sense.

J.A. at 14.

When it came to actually deducting the fees for that issue, however, the District Court only excluded "fees for time spent litigating the *constitutional* validity of Initiative 11." *Id.* at 15 (emphasis added). The court never explained why it was only deducting the time spent on the constitutional validity but not deducting what seems to have been considerable time spent on the local validity issue. There may be some plausible explanations for this distinction between the constitutional and local law issues. But instead of our hypothesizing about what they may have been and passing judgment on rationales that might not have motivated the district court at all, we feel the better course is to remand to the district court on this issue.[4]

### 2. *Work on Appellate Proceedings*

The District argues that plaintiffs are not entitled to work done in opposing the District's motion for summary reversal and expedited consideration. The District cites to *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), for the proposition that procedural victories are not compensable. This reading of *Hanrahan* is too broad. *Hanrahan* simply held that when *all* that the party has won is a "procedural" victory he has not prevailed and is therefore not entitled to fees; it never questioned the proposition that a prevailing party is entitled to compensation for his attorneys' fees in the litigation as a whole. *See* discussion *supra* pp. 1109–1110. Indeed, in this case, oppo-

sition to summary reversal and deferral of the appellate proceedings were an integral part of the plaintiffs' success in preserving the pre-election injunction.

We are similarly unpersuaded by the District's contention that none of the work on the merits of the appeal should have been compensated. It was the District—not the plaintiffs that persisted in bringing the legal challenge to the pre-election injunction even after the election took place. It was the plaintiffs' position, and later the position of the court, that the issue was moot. Plaintiffs' efforts in defending the District Court judgment on which they prevailed were clearly "reasonable in relation to the success achieved," *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941, and it was thus within the District Court's discretion to award those fees.

In calculating the fees for appellate work, the District Court again deducted all work related to the initiative's constitutional validity. But the court did not deduct the fees related to the validity of the initiative under local law. Consistent with our holding today, *see supra* pp. 1112–1113, we remand to the District Court to decide whether the local law issues should be excluded as well.

### 3. *Work on Amendments to Memoranda on Attorneys' Fees*

Finally, the District challenges the award of fees for time associated with the amended memoranda on attorneys' fees. These memoranda were filed to take account of the rapidly changing factual circumstances as well as legal developments, most significantly this court's decision in *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C. Cir.1984) (establishing new method of calculating rates for firms such as the one involved here), *cert. denied* —— U.S. ——, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985). It is of course a longstanding rule that hours reasonably devoted to litigating attorneys'

---

4. Fully cognizant of the general reluctance to remand attorneys' fees litigation and thus potentially add to the fees incurred, *see Copeland*, 641 F.2d at 901 & n. 42, we nonetheless conclude that this issue is so central to the correct disposition of the fee petition, that remand is the only prudent course.

fees are compensable. *See Action on Smoking and Health v. CAB,* 724 F.2d 211, 224 (D.C.Cir.1984); *Copeland v. Marshall,* 641 F.2d 880, 896 & n. 29, 901 (D.C. Cir.1980) (en banc). The District has made no showing that the time spent on attorneys' fees here was unreasonable, could have been avoided, or was unrelated to the fees award.

### CONCLUSION

We have carefully reviewed the record and the parties' arguments and have concluded that the District Court was correct in holding that the plaintiffs were prevailing parties on the pre-election injunction. Nonetheless, since the court did not address the District's arguments regarding the special circumstances rule, we find it necessary to remand the case to the District Court. Upon remand, and if it reaffirms its award of attorneys' fees, the District Court should also consider whether the reasoning that led it to exclude time spent on the constitutionality of the initiative issue, also requires it to deduct time spent on the validity of the initiative under local law. Thus, the order of the district court granting attorneys' fees is

*Remanded.*