Betty M. **CALLICOTTE**, Plaintiff,

v.

Richard **CHENEY**, Defendant.

**Civ. A. No. 88–1435.**

United States District Court,
District of Columbia.

Aug. 1, 1990.

Francis R. Ridley, Jr., Washington, D.C., for plaintiff.

Patricia D. Carter, Asst. U.S. Atty., Washington, D.C., for defendant.

## OPINION

JUNE L. GREEN, District Judge.

This matter is before the Court on defendant's Motion to Reconsider this Court's Memorandum Opinion and Order of February 21, 1990, 731 F.Supp. 1119 and on plaintiff's Motion for Attorney Fees and Costs. The Court has considered the motions and the memoranda submitted in support of the parties' positions, and the entire record in this case. These submissions present no new law or facts which warrant reversal of the Court's earlier decisions. The Court, therefore, repeats its conclusion that the defendant violated the Rehabilitation Act in failing to accommodate plaintiff, who was suffering from the dual handicapping conditions of chronic alcoholism and depression. For the reasons stated in its earlier opinions, and those reasons stated below, the Court also confirms its finding that plaintiff has made the requisite showing to qualify for an award of attorney's fees under this civil rights statute.

### I. Defendant Failed to Accommodate Plaintiff's Handicap

■ In his June 23, 1988 opinion, Judge Parker concluded that the defendant and the Defense Mapping Agency violated the Rehabilitation Act by attempting to discharge plaintiff, Betty M. Callicotte, for behavior caused by her alcoholism without first having made reasonable attempts to accommodate her handicap. The Court enjoined enforcement of the "Last Chance Agreement," which purported to waive plaintiff's rights to appeal the agency's action in discharging her. Plaintiff had signed the last chance agreement in exchange for the agency's agreement not to discharge her on an earlier occasion. Judge Parker issued an injunction barring plaintiff's dismissal until the agency allowed her additional leave to attend an intensive in-patient treatment program during July and August of 1988.[1] When plaintiff suffered a relapse after completing this treatment, the agency reinstated its notice of removal. Plaintiff filed a contempt proceeding, which resulted in another reprieve. Shortly afterwards, plaintiff's application for disability retirement was approved by the Office of Personnel Management, mooting further proceedings concerning her discharge.

Case law in this Circuit, particularly the persuasive opinion by Judge Gerhard Gesell in *Whitlock v. Donovan*, 598 F.Supp. 126 (D.D.C.1984), *aff'd mem.sub nom.*, 790 F.2d 964 (D.C.Cir.1986), establishes that the government cannot avoid its obligation to accommodate an alcoholic employee merely because that employee suffers a relapse. The Court finds that defendant has presented no new law or facts which warrant reconsideration of its earlier decisions concerning the defendant's liability for violating the Rehabilitation Act.

### II. Plaintiff is a Prevailing Party Entitled to a Reasonable Fee

■ The Court's orders had the effect of materially altering the legal relationship of these parties: the defendant was enjoined

---

1. The government complains that the merits of plaintiff's claims were not addressed at the preliminary injunction hearing. However, the Court notes that the government chose to present no witnesses at this hearing, and even declined to cross-examine plaintiff's expert witness. This witness, Dr. Kline, is a physician whose testimony formed the basis of the Court's conclusions that plaintiff suffered from dual handicapping conditions and that she would suffer irreparable harm in the absence of an injunction. Dr. Kline also testified at this hearing concerning the plaintiff's previous efforts at rehabilitation. *See Transcript of Preliminary Injunction Hearing* (May 26, 1988), pp. 17–25 (diagnosis); 28–32 (plaintiff may commit suicide if discharged at this time); 35–42 (previous treatments and prognosis).

from enforcing the last chance agreement and firing the plaintiff summarily; defendant was required to give plaintiff one more leave of absence to seek intensive treatment for her handicapping conditions; and defendant was required to support plaintiff's application for disability retirement with the Office of Personnel Management. Absent plaintiff's suit, and the Court's orders, plaintiff would have been summarily discharged pursuant to the last chance agreement on May 23, 1988.

The government's appeal of these rulings became moot when plaintiff's disability retirement became effective on January 13, 1989. The government contends that plaintiff is not a prevailing party entitled to an award of fees because there has been no final adjudication on the merits in this matter. As explained in Judge Parker's June 23, 1988 opinion, and this Court's February 21, 1990 opinion, the preliminary injunction necessarily was premised on a finding that plaintiff was likely to prevail on the merits of her claim. This finding distinguishes this case from the line of cases holding that no fees are available for mere procedural victories. *See, e.g., Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). In this Circuit, "it is also clear that a party may be considered to have prevailed even when the legal action stops short of final appellate, or even initial, judgment due to a settlement or intervening mootness." *Grano v. Barry*, 783 F.2d 1104, 1108 (D.C.Cir.1986) (citing *Commissioners Court of Medina County, Texas v. United States*, 683 F.2d 435, 440–21 (D.C.Cir.1982)); *see also, Dahlem v. Board of Educ. of Denver Public Schools*, 901 F.2d 1508 (10th Cir.1990) (citing cases holding that a party which achieves the objective of its suit by means of an injunction is a prevailing party, notwithstanding that the case becomes moot while the order is on appeal).

The duty of the Court is to "focus on the precise factual/legal condition that the fee claimant sought to change, and then determine if the outcome confers an actual benefit or relief from a burden." *Grano* at 1108–09, *quoting Miller v. Staats*, 706 F.2d 336, 341 n. 30 (D.C.Cir.1983). The posture of this case is not unlike *Grano*.[2] The Court of Appeals in *Grano* found that plaintiffs were prevailing parties because they had obtained an injunction pending a referendum vote, even though the initiative enacted as a result of the referendum subsequently was declared invalid. Plaintiffs there obtained the relief they initially sought: to stall demolition until a referendum could be held. *Id.* at 1110. In this case, Judge Parker's order of June 23, 1988 had the distinct effect of forestalling plaintiff's dismissal. That was plaintiff's objective in filing an application for a temporary restraining order and preliminary injunction. Plaintiff, therefore, prevailed.

This litigation can be viewed in three stages for the purposes of the attorney's fees analysis. First, there was the motion and hearing on plaintiff's request for a temporary restraining order and preliminary injunction. Plaintiff demonstrated her entitlement to fees for litigating the matter of the preliminary injunction. The Court grants plaintiff's request for attorney's fees and costs for this phase of the litigation.

Second, plaintiff brought a motion for contempt to enforce the injunction. In an order issued December 12, 1988, Judge Parker declined to hold defendant in contempt. Although the order granted plaintiff some further equitable relief, plaintiff was not fully successful on that motion, which requires some downward adjustment of the fees award. The Court has disallowed 19.75 hours from plaintiff's claim for work devoted to the unsuccessful motion. At a status hearing on January 10, 1989, Judge Parker ordered the parties to submit further pleadings on the question of equitable relief raised in the motion for contempt. On February 21, 1990 this Court

---

**2.** In *Grano*, plaintiffs sought to prevent demolition of the historic Rhodes Tavern, at least until after a referendum on the issue of preserving the Tavern. The District Court granted the injunction. Subsequent to the vote on the referendum, the Superior Court of the District of Columbia found the initiative, on its face, constituted an unconstitutional taking, and refused to reinstate a stay of the demolition. The tavern was then razed.

**6**

issued an order granting the majority of the further equitable relief requested by plaintiff. The authority for that award came from Judge Parker's finding that plaintiff's claims under the Rehabilitation Act were meritorious. Therefore, an award of attorney's fees for that work is appropriate. The Court grants plaintiff attorney's fees for this phase of the litigation, with the exception of the 19.75 hours devoted to preparing the motion for contempt.

Plaintiff's entitlement to a fee award comprises the third phase of this litigation. Plaintiff submitted pleadings in response to defendant's Motion to Reconsider and Opposition to Award of Attorney's Fees. It is well settled that hours spent litigating attorney's fees are compensable. *See Grano,* 783 at 1114. The Court grants plaintiff's request for attorney's fees for this phase of the litigation.

The Court today affirms its order of February 21, 1990 that plaintiff is entitled to attorney's fees. No special circumstances counsel against an award of attorney's fees, and there was no showing that the fees requested were unreasonable. Therefore, plaintiff's request for attorney's fees and costs is granted, as noted, for a total amount of $16,172.50 for fees and $1,270.00 for costs.

### III. CONCLUSION

The facts and the procedural history of this case present an unusual case. The issues presented for decision at each stage of this litigation had substantial merit on both sides. However, having considered carefully the entire matter, the Court believes these issues were decided correctly. Therefore, the motion for reconsideration is denied.