**Mikeisha BLACKMAN,
et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA,
et al., Defendants.**

**James Jones, et al., Plaintiffs,**

v.

**District of Columbia, et
al., Defendants.**

**Nos. Civ.A. 97–1629(PLF),
Civ.A. 97–2402(PLF).**

United States District Court,
District of Columbia.

July 9, 1999.

---

38

Alisa H. Reff, Swidler & Berlin, Washington, DC, Tammy Seltzer, Bazelon Center for Mental Health Law, Washington, DC, Charles A. Moran, Washington, DC, for plaintiffs.

Lisa Bell, Office of Corporation Counsel for the District of Columbia, Washington, DC, for defendants.

## *OPINION AND ORDER*

PAUL L. FRIEDMAN, District Judge.

This case is before the Court on the motion of plaintiffs Kenneth Ewell, Kieran Ewell, Shontay Alexander, Delonte Taylor, Shirita Taylor, De'Angelo McNeil, Jay Brown, Aaron Sanders, Marcus Taylor (DOB: 5/31/91), Antwon Lee, Mark Moore, Marcus Taylor (DOB: 3/30/93). Derrick Boney, Debra Moore, Teon Lindsay, Vincent Martin and Mirian Batista for attorneys' fees and costs incurred on a motion for immediate relief filed on their behalf on December 23, 1998.[1] Plaintiffs filed their motion for attorneys' fees and costs on May 6, 1999. On June 4, 1999, over four weeks after the motion for attorneys' fees was filed, defendants filed a *nunc pro tunc* motion for enlargement of time until June 16, 1999, to respond to plaintiffs' motion. On June 16, 1999, defendants filed another motion for extension of time, requesting until July 30, 1999, to respond to plaintiffs' motion.

■ These motions for extensions of time are unacceptable, especially since the first was filed a full two weeks after defendants' opposition was due. *See* Rule 6(b), Fed.R.Civ.P. (a motion for enlargement filed after the due date may be granted where the failure to act timely was the result of excusable neglect); *Barton–Smith v. District of Columbia*, Civil Action No. 98–3026, Order of June 1, 1999 at 2 (D.D.C.) ("The Office of the Corporation Counsel has made a habit of failing to respond to motions, appearing late for Court (when it appears at all), misplacing Court orders and notices of hearings, and failing to respond timely, if at all, to discovery requests in many cases on the calendar of the undersigned as well as in cases before other judges of this Court. It ill-behooves the District to request relief … when it has such a dismal record of compliance with Court rules and Court orders").

Moreover, there have been a number of other motions for attorneys fees filed by class members in these two consolidated cases, and when defendants actually have filed oppositions, those oppositions generally have been short, unhelpful memoranda assessing the District's continued position that Section 130 of the District of Columbia Appropriations Act of 1999 limits the fees that may be awarded. The Court already has ruled that Section 130 applies only to actions brought under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.*, and not to actions brought pursuant to 42 U.S.C. § 1983. *See Petties v. District of Columbia*, Civil Action No. 95–0148, Order of May 14, 1999 (D.D.C.). Since the instant actions clearly were brought pursuant to Section 1983, *see* Opinion of June 3, 1998 at 8–15, the oppositions previously filed by the District

---

1. Two of the plaintiffs have the same name, Marcus Taylor, and they therefore are identi-
fied by their respective dates of birth.

would, if considered here, be singularly unhelpful. The Court therefore will deny the motions for extensions of time. Defendants are deemed to have waived any arguments except as expressly provided in this Opinion and Order. *See* Local Rule 108(b) ("Court may treat the motion as conceded" if opposition is not timely filed).

## I

In an action brought pursuant to 42 U.S.C. § 1983, the Court, in its discretion, "may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *See* 42 U.S.C. § 1988. The first issue is whether plaintiffs are prevailing parties. The history of plaintiffs' motion for immediate injunctive relief is somewhat complicated. Plaintiffs, seventeen members of the class certified in these two consolidated cases, filed a motion for immediate relief on December 23, 1998. At the time the motion was filed, the Court already had found the District liable to the class of plaintiffs and had set the case for trial on the issue of remedy. These seventeen class members alleged that they could not wait until the issue of class-wide remedy was resolved because they faced a threat of irreparable injury if they were not granted immediate relief.

On January 22, 1999, the Court held a hearing on plaintiffs' motion, and defendants represented that they were attempting to provide relief to these plaintiffs. The Court directed the parties to file a joint status report on their efforts to resolve the motion. On January 29, 1999, the parties filed a joint status report indicating that they had agreed on a schedule to resolve the outstanding issues with respect to all of the plaintiffs. With one exception, DCPS agreed to issue a Notice of Proposed Placement for each plaintiff by a date certain, the latest of which was February 26, 1999.[2] The motion for immedi-

ate injunctive relief therefore was held in abeyance until February 26, 1999, at which time plaintiffs would withdraw the motion if defendants had timely issued Notices of Proposed Placements for each of the plaintiffs.

On March 2, 1999, plaintiffs filed a request for ruling on the motion for immediate relief with respect to nine of the plaintiffs. Plaintiffs first indicated that defendants had provided substantial relief according to the terms of the agreement of January 29, 1999, for seven of the plaintiffs—Kenneth Ewell, Kieran Ewell. Shontay Alexander, Delonte Taylor, Shirita Taylor, De'Angelo McNeil and Jay Brown. Plaintiffs also indicated that one plaintiff, Vincent Martin, had "moved from the jurisdiction without receiving any relief." *See* Pls' Request for Ruling at 1. With respect to the claims of the other nine, plaintiffs requested a ruling on their pending motion for immediate injunctive relief because defendants had failed to issue the promised notices of proposed placements. *See id.*

In the meantime, the Court had appointed a Special Master to facilitate a resolution of or to provide a report and recommendation on claims for immediate injunctive relief filed by members of the class certified in *Blackman* and *Jones*. *See* Order of February 12, 1999. The Court therefore referred the motion for immediate injunctive relief filed on behalf of the nine children to the Special Master. Prior to issuance of a report and recommendation by the Special Master, plaintiffs withdrew their request for immediate injunctive relief on behalf of Mirian Batista. It is not clear whether Mirian received any relief prior to withdrawing her motion. *See* Report and Recommendations of Special Master, Att. 1 (Letter from Charles Moran).

---

**2.** For one plaintiff, De'Angelo McNeil, DCPS agreed to revise the placement notice, rather than to issue a Notice of Proposed Placement.

With respect to the claims of the remaining eight, the Court granted preliminary injunctive relief to seven—Aaron Sanders, Marcus Taylor (DOB: 5/31/91), Antwon Lee, Mark Moore, Marcus Taylor (DOB: 3/30/93), Derrick Boney and Debra Moore—and held in abeyance the motion with respect to Teon Lindsay. *See* Order of April 22, 1999. The status of relief provided to Teon Lindsay is not clear from the record. The motion for immediate injunctive relief was held in abeyance at the request of plaintiffs' counsel, presumably because a settlement of Teon's claims was being negotiated with defendants, but it is not clear whether he has since received any relief.

## II

■ A plaintiff is a "prevailing party" for purposes of Section 1988 if she obtains "at least some relief on the merits of [her] claim" in the form of an enforceable judgment "or comparable relief through a consent decree or settlement." *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Thus, if a court rules in a plaintiff's favor and grants her the relief she sought, she clearly is a prevailing party. If a plaintiff obtains relief through a settlement before a court has ruled on the merits, she still may be considered a prevailing party for purposes of Section 1988. *See Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) ("The fact that [plaintiff] prevailed through a settlement rather than through litigation does not weaken her claim to fees" pursuant to Section 1988); *cf. National Black Police Ass'n v. District of Columbia*, 168 F.3d 525, 528 (D.C.Cir.1999) (plaintiffs were prevailing parties because injunction "alter[ed] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff"). In such a case, however, the Court must determine that "there were colorable civil rights claims involved in the case *and* [that] they served as catalysts in securing the result" before plaintiff can be considered a prevailing party. *Grano v. Barry*, 783 F.2d 1104, 1110 (D.C.Cir.1986) (emphasis added).

■ Applying that analysis to this case, the Court concludes that fourteen of the plaintiffs are prevailing parties for purposes of Section 1988. The seven whose requests for preliminary injunctions were granted—Aaron Sanders, Marcus Taylor (DOB: 5/31/91), Antwon Lee, Mark Moore, Marcus Taylor (DOB: 3/30/93), Derrick Boney and Debra Moore—clearly have prevailed for purposes of Section 1988 and are entitled to attorneys' fees. These seven plaintiffs received a ruling from the Court that defendants were liable to them and that they faced immediate and irreparable injury in the absence of immediate injunctive relief. By the Court's Order, plaintiffs received the substantial injunctive relief they sought by filing their motion, and they therefore are prevailing parties entitled to reasonable attorneys' fees and costs. *See National Black Police Ass'n v. District of Columbia*, 168 F.3d at 528 n. 2 (" '[O]nce a court has already ruled that the claims are actionable—not just colorable—civil rights claims, the question of whether the party meets the statutory requirement of having prevailed on the basis of "civil rights" claims has been unequivocally answered' ") (*quoting Grano v. Barry*, 783 F.2d at 1111).

■ The seven plaintiffs who received relief from the District after the filing of their motion for immediate injunctive relief but before March 2, 1999—Kenneth Ewell, Kieran Ewell, Shontay Alexander, Delonte Taylor, Shirita Taylor, De'Angelo McNeil and Jay Brown—also are prevailing parties. *See Farrar v. Hobby*, 506 U.S. at 111–12, 113 S.Ct. 566 (plaintiff is prevailing party if she receives substantial relief through consent decree or settlement). All seven of them received the substantial relief from the District that they had sought in their motion. Moreover, it is clear that there were "colorable" civil rights claims involved in the case. *See*

*Grano v. Barry,* 783 F.2d at 1110. In fact, the underlying civil rights claims at issue in this case not only are "colorable," but the Court already has found defendants liable to the class of plaintiffs for the very same violations of plaintiffs' statutory rights that prompted the filing of plaintiffs' motion.

Finally, it also is clear that the motion for immediate injunctive relief served as the catalyst in securing relief for these plaintiffs. *See Grano v. Barry,* 783 F.2d at 1110. The motion for immediate injunctive relief was filed because plaintiffs' counsel repeatedly had tried to obtain relief for his clients without filing such a motion. Only after failing to obtain any relief did plaintiffs finally resort to the Court, and only as a result of the filing of the motion were they able to obtain relief. It is worthy of mention here that the class complaint in this case was filed because the District was simply ignoring the statutory requirements of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* Even after the Court found the District liable for those violations of the IDEA, and even in the most egregious case, when the *life* of a child with disabilities was threatened, the District ignored the IDEA. *See, e.g., Barton–Smith v. District of Columbia,* Civil Action No. 98–3026, Order of December 23, 1998. Time and again, the Court has seen that the District too often focuses its attention on a crisis in the special education needs of a particular child only when it is faced with the threat of the Court issuing yet another preliminary injunction. Under the circumstances presented here, the District cannot plausibly argue that the motion for immediate injunctive relief in this case was not the catalyst for the relief afforded to these seven children.

### III

With respect to the claims of Marian Batista and Teon Lindsay, it is not clear what relief, if any, these two received from defendants, and the Court therefore cannot determine whether they are prevailing parties. Plaintiffs therefore are directed to file a status report indicating what relief, if any, Mirian Batista and Teon Lindsay achieved and whether any relief still is being sought for them. Finally, Vincent Martin received no relief or benefit from the District as a result of the filing of the motion for immediate injunctive relief. *See* Pls' Request for Ruling at 1. He therefore is not entitled to attorneys' fees and costs. *See Hewitt v. Helms,* 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) ("Respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail"). Because the motion for attorneys' fees and costs does not separate out the claims for work performed on behalf of each plaintiff, the Court cannot determine which of the hours that have been billed are attributable to work done for Vincent Martin, Mirian Batista and Teon Lindsay. Plaintiffs therefore are directed to file supplemental attachments to the motion for attorneys' fees separating out the time spent on each plaintiff.

### IV

■ To avoid potential delays in payment to counsel, the Court also will set forth the manner in which the amount of fees and costs will be calculated. In determining a "reasonable" attorneys' fees award, the Court begins by calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate"—the so-called "lodestar" fee. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). After calculating the lodestar figure, the Court in its discretion may adjust the fee upward or downward based on other considerations, especially the degree of success that plaintiffs had in prevailing on their claims. *See Farrar v. Hobby,* 506 U.S. at 114–15, 113 S.Ct. 566.

■ Under this analysis, the Court first must determine a reasonable hourly rate. Reasonable fees are to be calculated

according to the prevailing market rates in the relevant community for similar work by attorneys with comparable experience. "[A] fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements: the attorneys' billing practices; the attorneys' skill, experience and reputation; and the prevailing market rates in the relevant community." *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C.Cir.1995), *cert. denied*, 516 U.S. 1115, 116 S.Ct. 916, 133 L.Ed.2d 847 (1996). Currently pending before the Court are a number of motions for attorneys' fees filed by members of the class certified in this case to recover fees and fees incurred in litigating motions for preliminary injunctions. In order to facilitate resolution of the attorneys' fees claims raised in all of these motions, the following framework will apply to determine the reasonable hourly rate for each case.

 Plaintiffs can meet their burden on the first two elements—demonstrating the billing practices and the skill, experience and reputation of the attorneys—by filing affidavits or other sworn evidence establishing the normal hourly rate at which the attorney bills his or her time and the rate at which the District previously has compensated that attorney for prevailing in administrative due process hearings. If plaintiffs' counsel is a public interest group that ordinarily does not bill its clients at full rates, plaintiffs must satisfy the burden set forth in *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C.Cir.1988) (en banc) and *Covington v. District of Columbia*, 57 F.3d at 1108. If plaintiffs' counsel has not previously been compensated by the District for prevailing in an administrative due process hearing, then plaintiffs have the burden of

establishing that the hourly rate charged is comparable to the amount paid to other attorneys of comparable experience for prevailing in IDEA cases.

In order to determine the prevailing market rates in the relevant community, the third element that plaintiffs must establish, the Court will use as a point of reference the updated *Laffey* fee matrix prepared by the United States Attorney's Office, a copy of which is appended to this Opinion. *See Covington v. District of Columbia*, 57 F.3d at 1109 ("Although fee matrices are somewhat crude .. [they] do provide a useful starting point"). This fee matrix was developed by taking the rates from the original *Laffey* matrix, adding the Consumer Price Index increase for the Washington D.C. metropolitan area to the prior years' rate and rounding upwards if the sum is within three dollars of the next five dollar multiple. *See id.* at 1105 n. 14. The 1998–1999 figures in this matrix will be used to determine the *maximum* allowable fee for attorneys in these cases.

Plaintiffs must submit a sworn statement providing information about counsel so that the Court can determine where on the updated *Laffey* matrix plaintiffs' counsel falls. At a minimum, plaintiffs must submit information about the year of counsel's graduation from law school, the number of years that counsel has practiced law, the jurisdictions in which counsel is admitted to practice and when he or she was admitted to each bar, and whether counsel is a member of the Bar of this Court.[3] If the hourly rate requested is above the 1998–1999 hourly rate prescribed by the United States Attorney's Office updated *Laffey* matrix, the hourly rate will be reduced to the maximum hourly rate of the updated *Laffey* matrix.

**3.** If any lawyer is not a member of the District of Columbia Bar, counsel must submit evidence, under oath, that an application for admission is pending and the date it was filed. Plaintiffs and their counsel should be advised that any motions for attorneys' fees will be denied if the attorneys who performed the work are not members of the District of Columbia Bar, or did not have an application for admission pending at the time they performed work in any cases before this Court, and are practicing law in the District of Columbia. As appropriate, attorneys will be referred to the Committee on the Unauthorized Practice of Law.

**44**

Once plaintiffs have met the burden described above, there is a presumption that the hourly rate is reasonable, and the burden shifts to the defendants to rebut plaintiffs' showing of the reasonableness of that rate. "[I]n the normal case the Government must either accede to the applicant's requested rate or provide *specific contrary evidence* tending to show that a lower rate would be appropriate." *Covington v. District of Columbia*, 57 F.3d at 1109–10 (*quoting National Assn. of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1326 (D.C.Cir.1982)) (emphasis added).

**V**

Applying that framework to this case, the Court concludes from the sworn declaration of Charles Moran that plaintiffs have established the reasonableness of the rates billed.[4] First, plaintiffs have stated that the hourly rates used are the same as the rates that they normally bill and at which the defendants ordinarily reimburse them for work performed to prevail at the administrative due process level. *See* Pls' Motion at 13. Second, all of the rates requested are at or below the rate prescribed by the United States Attorney's Office updated *Laffey* matrix. The hourly rates charged by counsel for plaintiffs therefore are reasonable.

▆▆ The Court next must assess the reasonableness of the number of hours expended. It appears to the Court that some of the hours billed by plaintiffs' counsel may be excessive. *See Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. 1933 ("The district court should exclude from [the] initial fee calculation hours that were

not 'reasonably expended' "). Much of the billing, especially for Mr. Moran, plaintiffs' primary counsel, appears to have been done in quarter hour increments.[5] Counsel appears to have billed defendants a full quarter hour for certain *de minimis* tasks, and given the hourly rate of plaintiffs' primary counsel, the quarter hours quickly add up to a very sizeable bill. On December 30, 1998, for instance, plaintiffs' counsel billed $393.75 for phone calls and letters to determine plaintiffs' position with respect to a motion for an extension of time that the defendants were filing. *See* Pls' Motion, Exh. C1 at 10. On January 5, 1999, plaintiffs' counsel billed $56.25 to review a scheduling order issued by the Court. *See id.* at 11. Similarly, plaintiffs' counsel has billed $56.25 for a telephone call with the Special Master to set up a time and a place for a meeting. *Id.* at 32. Counsel clearly would have billed substantially less had he kept his time in tenth-hour segments. The defendants therefore are invited to submit a response addressing specifically the reasonableness of the hours expended. Accordingly, it is hereby

ORDERED that defendants' motions for extension of time filed June 4, 1999 and June 16, 1999 are DENIED; it is

FURTHER ORDERED that by July 21, 1999, plaintiffs shall file supplemental attachments to the motion for attorneys' fees separating out the time spent on each plaintiff and eliminating any *de minimis* or excessive hours; it is

FURTHER ORDERED that by July 21, 1999, plaintiffs shall file a status report with respect to what relief, if any, has been provided to Mirian Batista and Teon Lindsay; it is

---

4. The information that has been submitted by plaintiffs for the Court to determine the reasonableness of the hourly rate is not in the precise form set out in this Opinion and Order. Plaintiffs' counsel has, however, submitted the necessary information in one form or another in the motion or attachments. In the future, plaintiffs' counsel are advised that all information must be submitted in the form of sworn declarations and affidavits.

5. There are a couple of instances in which the time of plaintiffs' primary counsel has been billed in ten-minute or, in one instance, six-minute increments, *see* Pls' Motion, Exh. C1 at 11, but with the exception of those times, plaintiffs' primary counsel has billed in quarter hour increments. In the future, the Court will not award fees where plaintiffs' counsel has not calculated his time in tenth-hour increments.

FURTHER ORDERED that by July 30, 1999, defendants may file a response to plaintiffs' motion with respect only to the reasonableness of the hours expended.

SO ORDERED.

EXHIBIT
D
Civil Action
97-1629 (PLF/JMF)

FILED
Clerk, U.S. District Court
District of Columbia
JUL 9 1999

## LAFFEY MATRIX — 1980-1996

Years (Rate for June 1 - May 31, based on prior year.)

| Experience | 80-81 | 81-82 | 82-83 | 83-84 | 84-85 | 85-86 | 86-87 | 87-88 | 88-89 | 89-90 | 90.5 | 91-92 | 92-93 | 93-94 | 94-95 | 95-96 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20+ years | 165 | 175 | 185 | 195 | 205 | 210 | 220 | 230 | 245 | 260 | 275 | 285 | 300 | 305 | 310 | 315 |
| 11-19 years | 140 | 150 | 160 | 170 | 180 | 185 | 190 | 200 | 210 | 225 | 240 | 250 | 265 | 265 | 270 | 275 |
| 8-10 years | 120 | 125 | 130 | 135 | 140 | 145 | 150 | 155 | 165 | 175 | 185 | 195 | 210 | 215 | 220 | 225 |
| 4-7 years | 95 | 100 | 105 | 110 | 115 | 120 | 125 | 130 | 140 | 150 | 160 | 165 | 170 | 175 | 180 | 185 |
| 1-3 years | 70 | 75 | 80 | 85 | 90 | 95 | 100 | 105 | 110 | 115 | 120 | 125 | 130 | 135 | 140 | 145 |
| Paralegals/law clerks | 30 | 35 | 35 | 40 | 40 | 45 | 50 | 55 | 60 | 65 | 70 | 75 | 75 | 75 | 80 | 80 |

Methodology note:

*Laffey*, decided in 1983, set fees for work done in 1981-82. The fees in this matrix are calculated by adding the increase in the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore, DC-MD-VA-WV, to the applicable *Laffey* rate for the prior year, then rounding (up, if within $3 of the next multiple of $5). The result is then adjusted to ensure that the relationship between the highest rate and the lowest rates remains reasonably constant.

## LAFFEY MATRIX -- 1996-1999

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

| Experience | 96-97 | 97-98 | 98-99 |
|---|---|---|---|
| 20+ years | 325 | 330 | 335 |
| 11-19 years | 280 | 285 | 290 |
| 8-10 years | 230 | 235 | 240 |
| 4-7 years | 190 | 195 | 195 |
| 1-3 years | 150 | 155 | 155 |
| Paralegals/ law clerks | 80 | 85 | 85 |

Methodology note: *Laffey* decided in 1983, set fees for work done in 1981-82. The fees in this matrix are calculated by adding the increase in the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore, D.C-MD-VA-WV, to the applicable *Laffey* rate for the prior year, then rounding (up, if within $3 of the next multiple of $5). The result is then adjusted to ensure that the relationship between the highest rate and the lowest rates remains reasonably constant.