Laranda **DANIEL** as Parent and Next Friend of M.H., et al., Plaintiffs,

v.

**DISTRICT OF COLUMBIA**, Defendant.

**Civil Case No. 14-1270 (RJL/GMH)**

United States District Court, District of Columbia.

Signed March 30, 2016

Filed March 31, 2016

534

Robert Wilson Jones, James E. Brown & Associates, PLLC, Washington, DC, for Plaintiffs.

Aaron Josiah Finkhousen, Laura George, Office of the Attorney General for the District of Columbia, Washington, DC, for Defendant.

## ORDER

RICHARD J. LEON, United States District Judge

On February 17, 2016, Magistrate Judge G. Michael Harvey issued a Report and Recommendation [Dkt. # 18] with respect to plaintiffs' motion for summary judgment [Dkt. # 12] and defendant's cross-motion for summary judgment [Dkt. # 14]. Under Local Rule 72.3(b), the parties had four-teen days after being served with a copy of the Report and Recommendation to file written objections to the proposed recom-mendations. To date, no written objections have been filed. Accordingly, for the rea-

sons set forth in the Report and Recommendation, the lack of objections filed thereto, and the entire record herein, it is hereby

**ORDERED** that the Report and Recommendation [Dkt. # 18] filed in this case on February 17, 2016 is **ADOPTED** in its entirety; it is further

**ORDERED** that plaintiffs' motion summary judgment [Dkt. # 12] is **GRANTED in part** and **DENIED in part**; it is further

**ORDERED** that defendant's cross-motion for summary judgment [Dkt. # 14] is **GRANTED in part** and **DENIED in part**; it is further

**ORDERED** that plaintiffs are entitled to an award of attorneys' fees in the amount of $11,762.43 and an additional $63.48 in costs; and it is further

**ORDERED** that this case is dismissed.

**SO ORDERED.**

## REPORT AND RECOMMENDATION

### G. MICHAEL HARVEY, UNITED STATES MAGISTRATE JUDGE

This matter was referred to the undersigned for full case management. Plaintiff Laranda Daniel is the parent of plaintiff M.H., a child protected by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. Plaintiffs filed this action to recover attorney's fees and costs incurred while litigating claims under the IDEA at the administrative level. Before the undersigned are the parties' cross-motions for summary judgment. After reviewing the entire record,[1] the undersigned recommends that the Court grant in part and deny in part both parties' motions.

### BACKGROUND [2]

Plaintiff M.H. is approximately 8 years old. Pl. Mot., Ex. 2 at 1. He attends school within the District of Columbia Public Schools system ("DCPS"). Pl. Mot., Ex. 1 at 2. Plaintiff Laranda Daniel is his mother. Id. at 1. This case primarily concerns the 2012–2013 school year, when M.H. was in kindergarten. Pl. Mot., Ex. 2 at 4. During that year, M.H. experienced numerous behavioral difficulties, including repeated tardiness and suspensions for inappropriate and disrespectful behavior. Id. at 5–6. These behavioral problems began impacting his academic progress as the school year continued. See id. at 9–10.

On October 2, 2013, plaintiffs filed an administrative due process complaint against DCPS pursuant to the IDEA. Pl. Mot., Ex. 1. Plaintiffs alleged, inter alia, that DCPS denied M.H. a free appropriate public education ("FAPE") when it failed to identify, locate, and evaluate him as a child with a disability despite declining behaviors and the fact that M.H. had dem-

---

1. The relevant docket entries for purposes of this Report and Recommendation are: (1) Plaintiff's Motion for Summary Judgment ("Pl.Mot.") [Dkt. 12]; (2) Defendant's Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Def.Mot.") [Dkt. 14]; (3) Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment ("Pl.Opp.") [Dkt. 16]; and (4) Defendant's Reply in Support of Defendant's Motion for Summary Judgment ("Def.Reply") [Dkt. 17].

2. Plaintiffs and defendant submitted statements of material fact in conjunction with their cross-motions for summary judgment. After reviewing those statements and the evidence in the record, the undersigned finds that the pertinent facts are either undisputed or can be determined by reference to the record. The only disputes raised in the statements of fact relate to the legal significance, not the truth, of certain factual assertions. For ease of reference, the undersigned draws the relevant facts set forth below from the parties' exhibits, not their statements of fact.

onstrated no academic progress during the 2012–2013 school year. Id. Plaintiffs requested the following relief in their administrative due process complaint:

(1) that DCPS provide independent comprehensive psychological, social history, speech-language, occupational therapy, and functional behavioral assessments of M.H. and any other assessments reasonably recommended by the independent assessments;

(2) alternatively, that DCPS convene a student evaluation plan meeting regarding M.H.;

(3) that DCPS fully comply with the "child find" provisions of the IDEA;

(4) that DCPS convene a meeting within ten days of receiving the last of the independent assessments identified above in order to review the assessments, determine M.H.'s eligibility for special education and related services, and, if needed, develop an individualized education plan ("IEP") for M.H. as well as any compensatory education that may be due M.H.;

(5) that DCPS convene a manifestation determination meeting[3] and make an appropriate determination or, alternatively, that the hearing officer order that the behaviors causing M.H.'s suspensions are manifestations of his suspected disability;

(6) that DCPS implement an appropriate behavioral intervention plan ("BIP");

(7) that DCPS award reasonable compensatory education for the violations committed against M.H.; and

(8) that DCPS pay plaintiffs' reasonable attorney's fees and costs.

Id. at 6–7. In her decision of November 13, 2013, the hearing officer stated that during the course of the administrative proceedings, plaintiffs also requested forty hours of independent counseling with a behavior therapist or social worker and thirty-six hours of academic tutoring. Pl. Mot., Ex. 2 at 14–15. The hearing officer also noted that in her testimony at the hearing, plaintiff Laranda Daniel explained that she wanted the assessments to be made independently because she distrusted DCPS. Id. at 15.

On October 10, 2013, the parties met to engage in settlement negotiations. Pl. Mot., Ex. 3 at 1. Prior to that meeting, plaintiffs' fee invoice submitted in connection with their motion for summary judgment in this case bears only one entry billed on that same day as the settlement negotiations, a charge of .67 hours for preparation for the negotiations. Id. Plaintiffs, in their fee invoice, do not charge for the .5 hours expended during the settlement meeting itself. Id.

Also on October 10, 2013, and presumably at the settlement meeting, DCPS made an offer of settlement to plaintiffs in an effort to resolve all their claims brought in the administrative due process complaint. Pl. Opp., Ex. 1. DCPS offered the following settlement terms: (1) DCPS would conduct a comprehensive psychological assessment of M.H., which would include cognitive and educational components as well as analysis of social history, a speech and language assessment, an occu-

---

**3.** A manifestation determination meeting is a meeting which includes the student's parents, at least one of the student's teachers, at least one special education teacher, a representative of the local educational agency and, if appropriate, the child himself. At the meeting, the team determines whether the student's offending behavior, e.g., disciplinary problems, was a manifestation of the child's disability. See Dist. of Columbia v. Doe, 611 F.3d 888, 890 (D.C.Cir.2010).

pational therapy assessment, and a functional behavioral assessment, all within forty-five school days from the date of the agreement; and (2) DCPS would convene, within thirty school days of the completion of the final evaluation report resulting from the assessments, an IEP meeting to review the assessments and determine whether M.H. is eligible for special education services and develop an IEP and BIP, if necessary. Id. at 2. The offer of settlement did not include any provision for payment of plaintiffs' attorney's fees and costs. See id.

The hearing officer assigned to the case held an administrative hearing on October 29, 2013, to hear evidence and argument concerning plaintiffs' administrative due process complaint. Pl. Mot., Ex. 2 at 2–3. On November 13, 2013, the hearing officer issued her hearing officer's determination ("HOD"). Id. at 1. The HOD identified three issues raised in plaintiffs' administrative due process complaint: (1) whether DCPS failed to timely evaluate M.H. upon his parent's oral request for evaluation in October 2011; (2) whether DCPS failed to identify, locate, and evaluate M.H. during the 2012–2013 school year despite the suspicion that M.H. had emotional and behavioral disabilities which impacted his education; and (3) whether DCPS failed to conduct a manifestation determination meeting after M.H. was suspended for ten days during the 2012–2013 school year. Id. at 3.

The hearing officer found in plaintiffs' favor on only one of the three issues raised in the complaint. Id. at 7–14. The hearing officer denied relief as to the first issue. Id. at 7–8. While plaintiff Laranda Daniel testified at the hearing that she made an oral request for her son to be evaluated sometime during 2011, the principal testified that no such request was ever made. Id. at 8. In light of the squarely conflicting testimony, the hearing officer found that plaintiffs had failed to establish their claim by a preponderance of the evidence. Id.

As to the second issue, the hearing officer found that DCPS denied M.H. a FAPE when it failed to identify him as a student with disabilities impacting his education during the 2012–2013 school year. Id. at 12. The hearing officer observed that federal "child find" regulations obligate DCPS to identify, locate, and evaluate students with educational disabilities. Id. at 9. To trigger that duty, DCPS need only have a "suspicion of a disability rather than actual knowledge of a qualifying disability." Id. (quotation marks and citations omitted). To succeed on a claimed violation of this duty, plaintiffs are required to show that "school officials overlooked clear signs of disability." Id.

The hearing officer found that the District had violated its "child find" obligation with respect to M.H. as of May 14, 2013. Id. at 10. The hearing officer concluded that although DCPS had no reason to suspect M.H.'s disabilities earlier in the 2012–2013 academic year, by the end of that year DCPS had sufficient evidence to suspect that M.H. had disabilities which were negatively impacting his education. Id. at 11–12. Specifically, the hearing officer found that by May, M.H. had "not made measurable academic progress," had "significantly declining work habits" and social skills, and had been sent to the principal's office for poor behavior three times. Id. at 12. Finding that M.H. was not "demonstrat[ing] progress" typical of a kindergartener, the hearing officer concluded that DCPS' "child find" obligation was triggered. Id. Because DCPS at no time initiated an evaluation of M.H.'s special education needs during that school year, the hearing officer found that DCPS denied M.H. a FAPE. Id.

On the third and final issue, the hearing officer concluded that plaintiffs had not met their burden to prove that DCPS failed to conduct a manifestation determination meeting after M.H. was suspended for more than ten days during the 2012–2013 school year. Id. at 14. The hearing officer's conclusion did not turn on whether DCPS failed to timely or appropriately conduct the meeting; instead, the hearing officer simply found that plaintiffs had failed to show that M.H. had been suspended for more than ten days during the school year. Id. at 13–14; see also 34 C.F.R. § 300.530 (requiring a meeting between school officials and the student's parent after the student is removed from class for more than ten days in one school year). As with the first issue, all plaintiffs offered was plaintiff Laranda Daniel's testimony, which was contradicted by testimony from school officials and record evidence demonstrating that M.H. had fewer than ten days of suspensions during the school year. Pl. Mot., Ex. 2 at 13–14.

At the conclusion of the HOD, the hearing officer ordered DCPS to complete comprehensive psychological and functional behavioral assessments of M.H. within forty-five calendar days of the date of the order. Id. at 16. In a footnote, the hearing officer stated that although the record did not contain evidence suggesting a need for speech-language and occupational therapy assessments, she "strongly suggest[ed]" that DCPS complete those assessments as well, particularly since DCPS agreed to do so at the hearing. Id. at 16 n. 3. The hearing officer further ordered that if, as a result of those assessments, M.H. was found to be eligible for special education and related services, DCPS must develop an IEP and a BIP for M.H. Id. The hearing officer also ordered that if plaintiffs disagreed with DCPS' assessments, DCPS must issue an authorization

letter for independent assessments. Id. Finally, the hearing officer ordered that if, as a result of independent assessments, M.H. was found to be eligible for special education and related services, DCPS must "specifically address the needs of the student given the DCPS' failure to provide services to the student beginning October 11, 2013." Id.

During the administrative proceedings, plaintiffs were represented by attorney Joy Freeman–Coulbary, an associate at James E. Brown & Associates. See Pl. Mot., Ex. 1 at 8; Pl. Mot., Ex. 2 at 18. She is a 2002 graduate of the University of Florida Levin College of Law. Pl. Mot., Ex. 4 ¶ 5. She has been a member of the bar of the District of Columba since January 2003. Id. ¶ 4. Ms. Freeman–Coulbary has been employed as an associate attorney at Brown & Associates representing clients in special-education litigation since August 2012. Id. ¶ 3. Prior to accepting her position at Brown & Associates, Ms. Freeman–Coulbary had been a contract attorney and had represented clients in criminal and civil matters before the Superior Court of the District of Columbia. Id. ¶ 7. She also served as a special assistant with the United States Commission on Civil Rights where she studied and investigated civil rights issues. Id. ¶ 6. Attorney Freeman–Coulbary has practiced special education law almost exclusively since 2007 and has litigated or assisted in litigating over 300 cases at the administrative level during that time. Id. ¶ 8.

Plaintiffs claim that they incurred attorney's fees and costs of $18,159.53 during litigation of the administrative proceedings underlying this case. See Pl. Mot., Ex. 3 at 12. Plaintiffs' fee invoice includes work done not only by attorney Freeman–Coulbary but also by a paralegal, Yolanda Alex-

ander. Id. at 13.[4] Defendant, the District of Columbia, has not paid any part of plaintiffs' fee invoice to date. As a result, plaintiffs filed this civil action on August 25, 2014, to recover those attorney's fees and costs. Plaintiffs' Complaint [Dkt. 1] ¶ 21.

## LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when the moving party demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(a). Summary judgment should be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-movant's favor. Grosdidier v. Broad. Bd. of Gov., 709 F.3d 19, 23–24 (D.C.Cir. 2013); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the non-moving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. Anderson, 477 U.S. at 252, 106 S.Ct. 2505. Bare allegations or conclusory statements will not suffice; instead, the non-moving party is obliged to present specific facts that would enable a reasonable jury to find in its favor. Greene v. Dalton, 164 F.3d 671, 675 (D.C.Cir.1999).

### B. Fee Awards Under the IDEA

Congress enacted the IDEA in 1975 to ensure that children with disabilities have available to them a "free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). The statute empowers an aggrieved student, through her parent, to institute, among other things, an administrative due process complaint against the offending school district. Id. § 1415(b)(6). Those complaints are typically resolved by a hearing before an administrative hearing officer. Id. § 1415(f). Under the IDEA, a party who prevails on his complaint before the hearing officer may file an action in the district court to recover his reasonable attorney's fees and costs expended during the administrative proceedings. 20 U.S.C. § 1415(i)(3)(B). A court, in its discretion, "may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." Id. A prevailing party " 'is one who has been afforded some relief by a court.' " Jackson v. Dist. of Columbia, 696 F.Supp.2d 97, 101 (D.D.C.2010) (quoting Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)). If the plaintiff prevailed, he then bears the burden to demonstrate the reasonableness of both the hourly rate(s) he claims and the hours his counsel expended in litigating the administrative proceeding. Covington v. Dist. of Columbia, 57 F.3d 1101, 1107 (D.C.Cir.1995).

## DISCUSSION

Defendant does not dispute that plaintiffs are prevailing parties under the IDEA. Def. Mot. at 8. However, defen-

---

4. Plaintiffs' invoice reflects work done by other individuals, including other Brown & Associates attorneys and an educational advocate. Pl. Mot., Ex. 3. But the undersigned need not address the time billed by those persons because plaintiffs do not seek to recover fees for their time. See id.

dant opposes plaintiffs' requested fee award on three grounds. First, defendant argues that because the relief plaintiffs ultimately obtained from the hearing officer was less favorable than the relief defendant offered in settlement prior to the due process hearing, plaintiffs are not entitled to any fees accrued subsequent to its offer under 20 U.S.C. § 1415(i)(3)(D)(i). Def. Mot. at 5–7. Second, defendant contends that even if plaintiffs are entitled to an award of fees, their requested fee award should be reduced because of their limited degree of success during the administrative proceedings. Id. at 8–9. Finally, defendant requests an overall reduction in the requested fee because plaintiffs' counsel has employed improvident billing practices, including billing in impermissible time increments. Id. at 9–11.

### A. Plaintiffs' Entitlement to Attorney's Fees Under 20 U.S.C. § 1415(i)(3)(D)(i)

Defendant first claims that plaintiffs are not entitled to any fee award in this case because plaintiffs rejected an offer of settlement DCPS made prior to the November 3, 2013, HOD and because plaintiffs had no compensable fees invoiced prior to the settlement offer. Def. Mot. at 5. Defendant cites to 20 U.S.C. § 1415(i)(3)(D)(i), which provides:

> Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if—

(I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;

(II) the offer is not accepted within 10 days; and

(III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

20 U.S.C. § 1415(i)(3)(D)(i). Section 1415(i)(3)(E) further provides that "[n]otwithstanding subparagraph (D), an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer." Id. § 1415(i)(3)(E).

In this case, DCPS made an offer of settlement to plaintiffs on October 10, 2013. Pl. Opp., Ex. 1. This was more than ten days prior to the beginning of the administrative hearing, which began on October 29, 2013. Pl. Mot., Ex. 2 at 2. Plaintiffs rejected the offer. See Pl. Opp. at 5.[5] Thus, the inquiry here is twofold. First, the undersigned must determine whether the relief awarded by the hearing officer was not more favorable to plaintiffs than DCPS' offer of settlement. If so, plaintiffs may not receive any award of fees or costs unless their rejection of the offer of settlement was substantially justified.

### 1. The Relief Obtained From the Hearing Officer Was More Favorable Than Defendant's Offer of Settlement

■ As to the first question, the undersigned finds that the relief plaintiffs ulti-

---

**5.** It is not clear whether plaintiffs formally rejected the offer or simply failed to timely respond, but the distinction makes no difference for purposes of the statute. See B.L. through Lax v. Dist. of Columbia, 517 F.Supp.2d 57, 61 n. 8 (D.D.C.2007) (concluding that the distinction between rejecting a settlement offer and failing to respond "is immaterial to the statute").

mately obtained from the hearing officer was more favorable than the relief DCPS offered in settlement. See 20 U.S.C. § 1415(i)(3)(D)(i)(III). This standard is not met where the settlement offer is either better than or equivalent to the relief accorded to the plaintiffs by the hearing offer. See Dicks v. Dist. of Columbia, 109 F.Supp.3d 126, 131 (D.D.C.2015); Davis v. Dist. of Columbia, 71 F.Supp.3d 141, 148–49 (D.D.C.2014) (HOD was not "more favorable" where "the relief proffered by the District ... was substantially the same as the relief awarded by the Hearing Officer"). As the statute makes clear, "the relevant comparison ... is between the relief detailed in the [hearing officer's] ruling versus the relief detailed in the offer of settlement." Brighthaupt v. Dist. of Columbia, 36 F.Supp.3d 1, 6 (D.D.C.2014); T.B. ex rel. Brenneise v. San Diego Unified School Dist., 806 F.3d 451, 476 (9th Cir.2015). The following chart will aid in that comparison:

| Nature of Relief | Settlement Offer (Pl. Opp., Ex. 1 at 1–2) | HOD (Pl. Mot., Ex. 2 at 16) |
|---|---|---|
| Comprehensive psychological assessment | To be completed within 45 school days and would include cognitive and educational components as well as analysis of social history | To be completed within 45 calendar days |
| Functional behavioral assessment | To be completed within 45 school days | To be completed within 45 calendar days |
| Speech and language assessment | To be completed within 45 school days | Not expressly ordered but "strongly suggest[ed]" in a footnote |
| Occupational therapy assessment | To be completed within 45 school days | Not expressly ordered but "strongly suggest[ed]" in a footnote |
| Multidisciplinary team meeting ("MDT") to assess special education needs | To be convened within 30 school days of completion of final evaluation report resulting from the above assessments | To be convened within 10 school days of completion of final evaluation report resulting from the above assessments |
| IEP development | To be addressed and developed, if required, at the MDT | To be addressed and developed, if required, at the MDT |
| BIP development | To be addressed and developed, if required, at the MDT | To be addressed and developed, if required, at the MDT |
| Independent assessments | Not provided | To be authorized by DCPS if plaintiffs disagree with assessments after review of them during the MDT |
| Onset date for providing special education services | Not provided | If the MDT determines that special education services are required, M.H.'s needs must be addressed as of October 11, 2013 |
| Attorney's fees | Not provided | Not provided |

Plaintiffs contend that the relief set out in the HOD is more favorable than defendant's offer for three reasons. Pl. Opp. at 3–5. First, plaintiffs were given an "unfettered right" in the HOD to immediately seek independent evaluations if they disagreed with the results of the initial evaluations. Id. at 3. Second, plaintiffs received a more favorable timeline for completion of the assessments and the MDT needed to evaluate the assessment results. Id. at 3–4. Specifically, while DCPS' offer allowed it 45 school days to complete the assessments and an additional 30 school days to convene the MDT, the hearing officer ordered assessments to be completed within 45 calendar days and the MDT to convene within 10 school days thereafter. Id. Finally, the HOD set October 11, 2013, as the date from which DCPS' failure to provide services to M.H. began. Id. at 4–5. The settlement offer, plaintiffs argue, provided no such relief. Id.

Defendant, in reply, argues that the different relief the hearing officer provided does not render her decision more favorable than its settlement offer. Def. Reply at 3. Defendant claims that because it offered speech-language and occupational therapy assessments which the hearing officer did not, its offer was more favorable. Id. at 3–4. Moreover, although plaintiffs were given the ability to request independent evaluations, those evaluations were not set on a definite schedule. Id. at 4. As a result, although plaintiffs claim that they received an expedited timeframe from the hearing officer, the addition of independent evaluations to that timeline would in fact make it longer than the timeline DCPS offered. Id.

The undersigned concludes that the relief plaintiffs obtained from the hearing officer was more favorable than the relief offered by DCPS. However, as the chart above makes clear, the decision is not an easy one—plaintiffs obtained some relief in the HOD that DCPS did not offer, while DCPS offered some relief to plaintiffs that the hearing officer did not order. Accordingly, determining the result should focus on which elements of relief were most important.

This Court's recent decision in Staton v. District of Columbia is instructive. See Staton v. Dist. of Columbia, Civil Action No. 13–773 ABJ/DAR, 2014 WL 2700894 (D.D.C. June 11, 2014), report and recommendation adopted in full, 2014 WL 2959017 (D.D.C. July 2, 2014). There, the Court rested its conclusion that an HOD was more favorable than DCPS' offer of settlement on two grounds. Id. at *6. First, like here, the hearing officer ordered that DCPS fund independent evaluations for the plaintiffs, something DCPS did not offer to do. Id. The Court reasoned that the plaintiffs had throughout the administrative proceedings expressed a clear preference for independent evaluations, given DCPS' past failures to assess adequately the student's needs. Id. Accordingly, the Court gave substantial weight to the fact that plaintiffs obtained this relief from the hearing officer. See id. Second, the hearing officer ordered DCPS to complete an IEP meeting and formulate an IEP for the student within 10 days of receiving the assessments provided, whereas DCPS offered to review the assessments 30 days after receiving them, then convene an IEP meeting within 20 days after that, and finally work out the logistics of services to be provided within an additional 10 days. Id. at *7. The Court concluded that the hearing officer's expedited timeline, coupled with the provision for independent evaluations, rendered the HOD more favorable to the plaintiffs than DCPS' settlement offer. Id.

This case is closely analogous to Staton. First, DCPS failed to offer in its settlement proposal a contingency for plaintiffs to receive independent assessments, unlike the hearing officer. As the hearing officer made clear, plaintiffs had an unrestricted right to request independent assessments in the event they disagreed with DCPS' assessments. Like the plaintiffs in Staton, independent assessments are very important to plaintiffs here—their claim for independent evaluations was first set forth in their administrative due process complaint and reiterated in the testimony of plaintiff Laranda Daniel at the administrative hearing. Pl. Mot., Ex. 1 at 6; Pl. Mot., Ex. 2 at 15. As plaintiff Laranda Daniel testified at the administrative hearing, she is highly distrustful of DCPS and wanted independent assessments to ensure that her son's needs were fairly and fully evaluated. Pl. Mot., Ex. 2 at 15.

As in Staton, here the ability to obtain independent assessments was a cornerstone of plaintiffs' claim for relief. More-

over, because the record reflects that plaintiffs expressed a desire for independent evaluations throughout the administrative proceedings, the undersigned credits that request as genuine, not a post hoc rationalization offered to this Court to avoid section 1415(i)(3)(D)(i). See T.B. ex rel. Brenneise, 806 F.3d at 480 (reversing a denial of fees by the district court where, inter alia, the administrative record showed that the parents "were genuinely interested in a district[-school] placement" which was awarded by the hearing officer but not included in the offer of settlement). Thus, the fact that the hearing officer awarded this relief to plaintiffs demonstrates that the HOD was more favorable to them than the offer of settlement.

Further, like in Staton, plaintiffs here enjoyed an accelerated timeline under the HOD as compared with DCPS' offer of settlement. By the undersigned's calculation, the process of assessments, meetings, and development of new educational services for M.H. would be completed approximately one calendar month faster under the HOD than under DCPS' proposal. This ratio is less than the two-month difference at issue in Staton, but the very fact that plaintiffs received an expedited timeline from the hearing officer is enough to suggest that the HOD is more favorable to them. This is particularly true when coupled with plaintiffs' victory on the important issue of independent assessments.

Additionally, defendant's argument that the independent evaluations might delay plaintiffs' otherwise expedited schedule is misguided. Def. Reply at 4. The HOD imposed an expedited schedule for the initial evaluations in comparison to DCPS' offer. Whether plaintiffs would invoke their right to receive independent assessments, and the amount of time that might take, is irrelevant to how long the HOD

gave DCPS to complete the initial series of assessments.

This result is not disturbed by the fact that some relief which DCPS offered in its settlement proposal was not ultimately given by the hearing officer. Again, DCPS proposed several more assessments for M.H. than the hearing officer ultimately awarded, including a "comprehensive psychological assessment" which included a "social history" component, a speech-language assessment, and an occupational therapy assessment. Compare Pl. Opp., Ex. 1, with Pl. Mot., Ex. 2 at 16. The undersigned finds, however, that those assessments were less central to the relief plaintiffs sought and which M.H. needs. Pl. Mot., Ex. 2 at 16 ("While the Petitioner requested speech-language and OT assessments in the Complaint, the record does not contain evidence which suggests that speech-language and OT assessments relate to the area of the student's suspected disability."). In any event, DCPS agreed to provide those assessments without any action by the hearing officer, thus rendering moot her failure to award them. Id. at 16 n. 3. Accordingly, on the facts of this case, the undersigned concludes that the relief accorded by the hearing officer was more favorable than that offered by DCPS in its settlement proposal.

## 2. In the Alternative, Plaintiffs Were Substantially Justified in Rejecting Defendant's Settlement Offer

Even if the Court concludes that the hearing officer's relief was not more favorable to plaintiffs than DCPS' offer of settlement, it should find that plaintiffs were substantially justified in rejecting DCPS' proposed settlement. 20 U.S.C. § 1415(i)(3)(E). In its motion, defendant contends that plaintiffs were not justified in rejecting its offer. Def. Mot. at 6–7. Defendant, divining plaintiffs' likely counterargument, asserts that its failure to of-

fer attorney's fees did not justify plaintiffs' rejection of its offer. Id. According to defendant, based on the billing records plaintiffs submitted with their motion, plaintiffs' counsel had not billed plaintiffs for any compensable time prior to the settlement meeting and DCPS' settlement offer, both of which occurred on October 10, 2013. Id. at 7; Pl. Mot., Ex. 3 at 1 (plaintiffs' billing invoice reflecting only one time entry, for. 67 hours, billed prior to the settlement meeting). As a result, defendant argues, it rightly did not include any provision for attorney's fees in its offer. Def. Mot. at 7.

As defendant predicted, plaintiffs assert in their opposition that they were substantially justified in rejecting defendant's offer because it did not provide for any payment of reasonable attorney's fees. Pl. Opp. at 5. Plaintiffs argue that the invoice they have submitted in connection with their motion is "voluntarily limited" to fees incurred after the settlement meeting between plaintiffs and DCPS. Id. at 6. Plaintiffs contend that they had "clearly incurred fees in the preparation and drafting of the due process complaint" which was filed eight days prior to the meeting and that, at the time of DCPS' offer, DCPS "had no way of knowing that [plaintiffs] would later request fees limited to the time period after the offer." Id. In response, defendant reiterates that plaintiffs have provided the Court with "no documented, compensable attorney's fees reasonably in-

curred prior to the settlement offer." Def. Reply at 5.[6]

Defendant would have the Court believe the parties' dispute focuses solely on its settlement offer's failure to compensate plaintiffs' counsel for the. 67 hours expended in preparation for the settlement meeting. Def. Mot. at 6–7. It does not.[7] The record reflects that plaintiffs' counsel expended significantly more time than that prior to defendant's settlement offer. Plaintiffs' counsel drafted and filed a detailed, 26–paragraph administrative due process complaint eight days prior to the settlement offer. Pl. Mot., Ex. 1. Having received the complaint, DCPS must have known at the moment it made its offer that plaintiffs' counsel had expended significant time meeting with plaintiffs to discuss their claims, evaluating those claims' legal sufficiency, and preparing and drafting the complaint. All that time is compensable under the IDEA's fee-shifting provisions. Nevertheless, DCPS offered $0 in fees to the attorney who forced its hand by bringing the complaint.

DCPS cannot rationally contend that plaintiffs' counsel accrued no fees in the drafting of the due process complaint or that it anticipated that plaintiffs would voluntarily decline to seek those fees in this Court. Thus, plaintiffs' decision to reject that offer was substantially justified. Several cases in this District illustrate why. In Brighthaupt, for example, the Court concluded that DCPS' $300 flat attorney's

6. Note that the issue of attorney's fees does not affect the analysis under section 1415(i)(3)(D)(i), supra Part A.1, because neither the offer of settlement nor the HOD awarded attorney's fees and costs to plaintiffs. Compare Pl. Mot., Ex. 2 at 16, with Pl. Opp., Ex. 1.

7. In any event, defendant's claim that plaintiffs may not be compensated under section 1415(i)(3)(D)(iii) for the. 67 hours their coun-

sel spent preparing for the settlement meeting is not correct. This Court has previously held that time spent preparing for a settlement meeting is compensable. See Young v. Dist. of Columbia, 893 F.Supp.2d 125, 133 (D.D.C. 2012) (preparation for a settlement meeting "do[es] not fall within the category of 'preliminary meetings' and defendant offers no evidence that they fall within any other category for which the Court is barred from awarding fees").

fee offer was "unreasonable" and "insincere" given the accrual of over $5,000 in pre-offer fees. Brighthaupt, 36 F.Supp.3d at 8–9. According to the Court, a "de minimis" offer of "a mere pittance in attorney's fees does not trigger that section of the statute that precludes an award of attorney's fees for time spent on the case after the settlement offer was made if the plaintiff ultimately secures no more relief than that which was originally offered." Id. at 9; see also Davis, 71 F.Supp.3d at 150 (plaintiffs were substantially justified in rejecting DCPS' settlement offer which included no attorney's fees despite DCPS' argument that the hours expended by counsel prior to the settlement offer were only "nominal"); Queen–Brown v. Dist. of Columbia, Civil Action No. 14–cv–2001, Report & Recommendation, Docket No. 20 (D.D.C. July 2, 2015), at 13 ("[P]arents are substantially justified in rejecting settlement offers that are conditioned upon unreasonable offers of attorneys' fees."), report and recommendation adopted in full, Civil Action No. 14–cv–2001, Order, Docket No. 21 (D.D.C. July 20, 2015).

Just as in Brighthaupt, the undersigned views DCPS' offer here as insincere. Cf. Queen–Brown, Dkt. 20 at 14 n.7 ("The undersigned finds it of concern that the District considered this to be a sincere settlement offer and questions why the District thought it appropriate to expend government time and resources on a proposal so obviously insincere as to be destined for rejection."). "Congress included the [IDEA] fee-shifting provision so that all children and their families would be able to enforce the child's right to a free appropriate public education, regardless of financial means." Garvin v. Gov't of D.C., 910 F.Supp.2d 135, 138 (D.D.C.2012). Parents or guardians of children with special needs should not have to choose between a District offer of special education services for those children on the one hand, and

continuing to pursue litigation so that their counsel who caused DCPS to make the offer in the first place may obtain some measure of reasonable compensation. Because DCPS' offer of $0 in fees "bore no rational relationship" to the legal fees plaintiffs plainly had incurred at the time the offer was made, plaintiffs were substantially justified in rejecting it. Queen–Brown, Dkt. 20 at 14. Indeed, until DCPS refrains from making such untenable settlement offers, it should not be surprised when neither IDEA plaintiffs nor this Court take those offers seriously.

Accordingly, the undersigned recommends that the Court award plaintiffs their reasonable attorney's fees and costs because the relief plaintiffs obtained from the hearing officer was more favorable than that offered by DCPS in settlement. As such, an award of fees is not barred by section 1415(i)(3)(D)(i). However, even if the Court finds that the HOD was not more favorable to plaintiffs than DCPS' offer of settlement, it should nevertheless find that an award of fees is not barred by section 1415(i)(3)(D)(i) because plaintiffs were substantially justified in rejecting DCPS' offer, which included no provision for attorney's fees.

## B. Amount of Award

Having determined that DCPS' offer of settlement does not bar an award of fees and costs in this case, the undersigned next considers the appropriate amount of that award.

### 1. Reasonableness of Hourly Rate and Hours Expended

 Under the IDEA, this Court has discretion to "award reasonable attorney's fees as part of the costs ... to a prevailing party who is the parent of a child with a disability" in an administrative proceeding. 20 U.S.C. § 1415(i)(3)(B)(i). To determine

the appropriate award, courts apply a three-part test. That test requires the court to determine the "number of hours reasonably expended in litigation," then set a "reasonable hourly rate," and finally decide whether a multiplier is warranted.[8] Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516, 1517 (D.C.Cir. banc 1988). The party seeking fees "bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates." Covington, 57 F.3d 1101, 1107–08. Upon a proper showing as to these elements, a presumption arises that the number of hours billed and the hourly rates are reasonable. See Jackson, 696 F.Supp.2d at 100–01. The burden then shifts to the defendant to "provide specific contrary evidence tending to show that a lower rate would be appropriate." Covington, 57 F.3d at 1109–10.

■ As to the hourly-rate element, courts analyze three sub-elements: (1) "the attorney['s] billing practices"; (2) "the attorney['s] skill, experience, and reputation"; and (3) "the prevailing market rates in the relevant community." Id. at 1107. Determining a prevailing market rate is "inherently difficult," but the D.C. Circuit has emphasized the "importance of fixing the prevailing hourly rate in each case with a fair degree of accuracy." Eley v. Dist. of Columbia, 793 F.3d 97, 100 (D.C.Cir.2015) (internal quotations omitted). To meet its burden with respect to the hourly-rate element, a fee applicant must " 'produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.' "

Id. (quoting Blum v. Stenson, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)).

■ One such type of additional evidence permitted in this Circuit is attorney's fee matrices such as the Laffey Matrix prepared by the Civil Division of the United States Attorney's Office for the District of Columbia ("USAO Laffey Matrix"). Id.; Rooths v. Dist. of Columbia, 802 F.Supp.2d 56, 62 (D.D.C.2011). The USAO Laffey Matrix is used when a fee-shifting statute permits the recovery of reasonable attorney's fees. It was created to demonstrate the "prevailing rates in the community for lawyers of comparable skill, expertise and reputation in complex federal litigation." Laffey v. Nw. Airlines, Inc., 572 F.Supp. 354, 371–72 (D.D.C.1983). But while such attorney's fee matrices can "provide a useful starting point" in calculating the prevailing market rate, see Covington, 57 F.3d at 1109, as Eley teaches, a fee applicant does not meet her burden on the third element merely by submitting the USAO Laffey Matrix with a fee application. Rather, the applicant is obliged to demonstrate that the suggested rates in the matrix are "in line with those prevailing in the community for similar services." Eley, 793 F.3d at 104 (emphasis in original); id. at 100 (" 'An applicant is required to provide specific evidence of the prevailing community rate for the type of work for which he seeks an award.' ") (quoting Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1325 (D.C.Cir.1982) (emphasis in original)).

### a. Hourly Rate

■ Plaintiffs seek in their motion three-quarters USAO Laffey rates for at-

---

8. The IDEA prohibits application of any "bonus or multiplier," 20 U.S.C. § 1415(i)(3)(C), so this factor will not be considered. Eley v.

Dist. of Columbia, 793 F.3d 97, 100 (D.C.Cir. 2015).

torney Freeman–Coulbary, the primary attorney on this case, and paralegal Yolanda Alexander. Pl. Mot. at 10. Defendant does not challenge either of those hourly rates. As a result, the undersigned finds no basis on which to reject the proposed three-quarters USAO Laffey rates. Even if defendant had challenged the rates plaintiffs propose, the undersigned would find that plaintiffs had met their burden to justify their reasonableness. Plaintiffs provided evidence of Freeman–Coulbary's and Alexander's substantial experience and qualifications. Pl. Mot., Exs. 4–5. Plaintiffs also cite numerous cases awarding full Laffey rates and three-quarters Laffey rates in IDEA cases like this one. Pl. Mot. at 9–10; see, e.g., Bucher v. Dist. of Columbia, 777 F.Supp.2d 69, 74 (D.D.C. 2011) (awarding full Laffey rates and rejecting the notion that IDEA proceedings deserve lower rates because they are less complex than other federal litigation); Rooths, 802 F.Supp.2d at 63 (awarding three-quarters Laffey rates); Staton v. Dist. of Columbia, Case No. 1:13–cv–1966 (GMH), 2015 WL 5728884, at *5 (D.D.C. Sept. 30, 2015) ("[R]ecent [fee] orders in this District evidence a reasonable rate for attorney's fees in this case."). Accordingly, the undersigned recommends that the Court grant plaintiffs' request that their counsel and her paralegal be compensated at three-quarters USAO Laffey rates.

#### b. Hours Expended

 Defendant also does not oppose any specific time entry in plaintiffs' fee

invoice as unreasonable. Def. Mot. at 9–11. Instead, defendant argues that the Court should award no fees at all because plaintiffs have billed in increments other than by the tenth of the hour. Id. Defendant argues that plaintiffs' billing practices, which include increments of ten minutes and fifteen minutes, tend to over-bill because larger time increments generally overestimate the time expended on a task. Id. at 10. Alternatively, defendant argues that the Court should substantially reduce the fee "by 25% or more" because of plaintiffs' counsel's billing practices. Id. at 11.

Plaintiffs counter that their counsel's billing practices are not impermissible. Pl. Opp. at 8. They claim that their counsel's use of a combination of fifteen-minute and ten-minute billing increments has been repeatedly approved by this Court. Id. at 9.[9] Plaintiffs contend that when this Court has disapproved of billing in fifteen-minute increments, it has been in cases where a firm has billed solely in fifteen-minute increments. Id. at 9–10 (citing Blackman v. Dist. of Columbia, 59 F.Supp.2d 37, 44 n. 5 (D.D.C.1999)). In contrast to those instances, plaintiffs argue that their use of both ten-minute and fifteen-minute billing increments increases the accuracy of their invoice. Id. at 10. In reply, defendant argues that Blackman expressly directs that billing should be made in six-minute increments and not in any other division of time. Id. at 9–10.

---

**9.** Although the undersigned ultimately finds that plaintiffs' counsel's billing practices do not warrant a reduction in fees here, the undersigned notes that none of the cases plaintiffs cited for this proposition even mention the issue of counsel's billing practices. See Pl. Opp. at 9 (citing Arthur v. Dist. of Columbia, 106 F.Supp.3d 230, 237 (D.D.C. 2015) ("[T]he District takes no issue with the number of hours billed and disputes the hourly rates in only one respect[.]"); Thompson v.

Dist. of Columbia, No. 12–cv–103, Memorandum Opinion, Docket No. 28 (D.D.C. July 24, 2013); McFarland v. Dist. of Columbia, No. 12–cv–188, Report & Recommendation, Docket No. 28 (D.D.C. May 28, 2013); Cosbert v. Options Public Charter School, No. 12–cv–92, Memorandum Opinion, Dkt. 21 (D.D.C. Nov. 12, 2012); Cosbert v. Options Public Charter School, No. 12–cv–92, Memorandum Opinion, Dkt. 28 (D.D.C. Apr. 22, 2013)).

In assessing the reasonableness of the hours claimed, courts in this District examine whether the plaintiff's counsel employed appropriate billing practices. See, e.g., Blackman, 59 F.Supp.2d at 44. In Blackman, for example, the Court found that plaintiffs' counsel's practice of billing solely in fifteen-minute increments led to over-billing for de minimis tasks like making phone calls. Id. In a footnote, the Court cautioned:

> There are a couple of instances in which the time of plaintiffs' primary counsel has been billed in ten-minute or, in one instance, six-minute increments, see Pls' Motion, Exh. C1 at 11, but with the exception of those times, plaintiffs' primary counsel has billed in quarter hour increments. In the future, the Court will not award fees where plaintiffs' counsel has not calculated his time in tenth-hour increments.

Id. at 44 n. 5. Later Courts have echoed Blackman, holding that six-minute billing increments are more accurate than fifteen-minute increments. A.C. ex rel. Clark v. Dist. of Columbia, 674 F.Supp.2d 149, 156–57 (D.D.C.2009); Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice ("CREW I"), Civil Action No. 12–1491 (JDB), 2015 WL 6529371, at *6 (D.D.C. Oct. 27, 2015). However, even in A.C., the magistrate judge recommended that the fifteen-minute billing be permitted, A.C., 674 F.Supp.2d at 157, and in CREW I, the Court "[did] not deem quarter-hour increments so imprecise as to merit a reduction on that basis alone," CREW I, 2015 WL 6529371, at *7. Similarly, other cases from this District reflect a more lenient view, finding that fifteen-minute increments are appropriate where counsel presents evidence that such is his long-standing billing practice. See Thomas ex rel. A.T. v. Dist. of Columbia, Civil Action No. 03–1791 (CKK), 2007 WL 891367, at *4 (D.D.C. Mar. 22, 2007). In-

deed, in one case, the Court approved the use of thirty-minute and sixty-minute billing increments based on the sworn statements of counsel that they reduced their claimed hours to avoid over-billing. Citizens for Responsibility & Ethics in Washington v. FEC, 66 F.Supp.3d 134, 151 (D.D.C.2014).

The undersigned finds that plaintiffs' counsel's billing practices alone are insufficient to warrant the 25% reduction defendant requests, much less an award of no attorney's fees at all. This case is unlike many others involving challenges to billing practices. In the typical case, counsel has failed to keep accurate time records for numerous reasons, including failing to keep contemporaneous records of work performed in addition to billing in impermissible time increments. See, e.g., Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice ("CREW II"), 825 F.Supp.2d 226, 230–31 (D.D.C. 2011). Together, these failures undermine the Court's confidence in the accuracy of the records, thereby prompting a blanket reduction in the requested fee. Id. (reducing fee by 37.5% to account for imprecise billing practices).

In this case, however, defendant requests a substantial reduction, 25%, solely because plaintiffs' invoice reflects some entries using fifteen-minute or ten-minute increments and others using six-minute increments. The undersigned views such a reduction as excessive. Having reviewed counsel's invoice, the undersigned is not left with significant concern that counsel's time records are inaccurate or inflated. As in CREW I, the undersigned does not find counsel's use of alternative increments "so imprecise as to merit a reduction on that basis alone." CREW I, 2015 WL 6529371, at *7. Moreover, unlike CREW II, here plaintiffs' counsel averred that she kept accurate, contemporaneous records of

**550**

her time expended and defendant has not challenged that statement. Pl. Mot., Ex. 4 ¶ 9; CREW II, 825 F.Supp.2d at 231. As a result, the undersigned will follow the approach of other judges in this District and recommend that the Court compensate all of plaintiffs' counsel's billed time while simultaneously cautioning plaintiffs' counsel that future invoices should be billed in six-minute increments. See ACLU v. U.S. Dep't of Homeland Security, 810 F.Supp.2d 267, 279 n. 7 (D.D.C.2011) ("While the Court would not expect any future billing to be submitted in this case, the plaintiff is frequently involved in other litigation in this Court and is on notice that payment based on quarter-hour billing increments will not be condoned."); A.C., 674 F.Supp.2d at 157 (cautioning counsel that "future time sheets submitted to the Court must reflect billing entries in six-minute increments"). Accordingly, the undersigned recommends that the Court make no reduction in plaintiffs' claimed fee for counsel's failure to bill consistently in six-minute increments.

### 2. Degree of Success

 Finally, the District argues that the Court should reduce plaintiffs' requested fee award "by 50% or more" because plaintiffs prevailed on only two of the three claims they made in the administrative proceedings. Def. Mot. at 8–9. The district court has discretion to reduce an attorney's fee award to account for limited success on the merits. Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Courts in this District regularly reduce an IDEA plaintiff's claimed fee when the plaintiff succeeded on fewer than all claims or received some, but not all, of his requested relief during the administrative proceedings. See, e.g., McAllister v. Dist. of Columbia, 21 F.Supp.3d 94, 102–04 (D.D.C.2014); Dickens v. Friendship–Edison P.C.S., 724

F.Supp.2d 113, 121–23 (D.D.C.2010). Where the court finds a reduction for limited success appropriate, it may either eliminate specific hours claimed or simply reduce the award as a whole. McAllister, 21 F.Supp.3d at 102 (citing Hensley, 461 U.S. at 436–37, 103 S.Ct. 1933); Young v. Dist. of Columbia, Civil Action No. 14–1181 DAR, 2015 WL 5729119, at *6 (D.D.C. Sept. 30, 2015) ("The Court may reduce the overall fee award based on limited success, irrespective of whether the total number of hours expended is reasonable.").

 To be compensated for a claim on which they were not successful, plaintiffs must show that "work on the unsuccessful claim [is] relate[d] to the work on [a] successful claim." Medina v. Dist. of Columbia, 864 F.Supp.2d 13, 16 (D.D.C. 2012). "The fee award, of course, should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief. Such work 'cannot be deemed to have been expended in pursuit of the result achieved.'" Fox v. Vice, 563 U.S. 826, 131 S.Ct. 2205, 2214, 180 L.Ed.2d 45 (2011) (quoting Hensley, 461 U.S. at 435, 103 S.Ct. 1933). Two claims are related when they "share a common core of facts or are based on related legal theories." George Hyman Constr. Co. v. Brooks, 963 F.2d 1532, 1537 (D.C.Cir. 1992). In other words, when the plaintiff presents separate legal claims based on the same facts, lack of success on one claim does not mean that the time spent on other, successful claims should be denied. Williams v. First Gov't Mortg. & Investors Corp., 225 F.3d 738, 746 (D.C.Cir.2000). "It is only when the unsuccessful claim is based on a different set of facts and a different legal theory that Hensley requires that the fees pertaining to the unsuccessful claim be disallowed." Medina, 864 F.Supp.2d at 17. Moreover, courts do

not approach this question mathematically; instead, they make "a more holistic assessment of the relief sought" and the plaintiff's success in obtaining that relief in addition to the plaintiff's success or failure on individuals claims. Brown v. Dist. of Columbia, 80 F.Supp.3d 90, 99 (D.D.C. 2015); Hensley, 461 U.S. at 435 n. 11, 103 S.Ct. 1933.

Defendant argues that a 50% reduction is appropriate in this case because even as to the one issue on which plaintiffs prevailed, they were only partially successful. Def. Mot. at 8. Specifically, on the issue of whether DCPS violated its "child find" obligation with respect to M.H., the hearing officer found that DCPS' "child find" obligation did not arise until May 2013 although plaintiffs had alleged that the obligation arose in January 2013. Id. Moreover, defendant argues that the hearing officer awarded only two of the assessments plaintiffs requested as relief. Id. Because plaintiffs' invoice does not describe which billed work applies to which claim, defendant requests a blanket reduction of the entire requested fee. Id. at 8–9.

In response, plaintiffs assert that defendant's proposed overall reduction is "excessive." Pl. Opp. at 8. Plaintiffs contend that they "received the overwhelming majority of the relief requested" and should therefore receive the entire requested fee. Id. They further argue that although they failed as to the third issue raised in the administrative due process complaint— whether DCPS failed to conduct a manifestation determination meeting after M.H. was suspended for ten days during the 2012–2013 school year—that issue was closely interrelated with issue two—whether DCPS failed to comply with its "child find" obligation—on which they did prevail. Id. Because of that interrelationship, they claim there should be no reduction for

their failure on issue three. Id. at 7–8. In reply, defendant argues that plaintiffs' three claims are legally and factually distinct, rendering it impossible for the Court to salvage fees expended on issues one and three in the instant fee award. Def. Reply at 6–8. Furthermore, defendant asserts that although plaintiffs received some relief, it was less than plaintiffs had actually requested. Id. at 8.

The undersigned finds that a 35% fee reduction is appropriate in this case because of the mixed success plaintiffs achieved below. In McAllister, the Court reduced the requested fee award by half because the plaintiff succeeded on only one of three claims raised before the hearing officer. McAllister, 21 F.Supp.3d at 102. The Court reasoned that a two-thirds reduction, as requested by DCPS, was inappropriate because two of the claims were interrelated. Id. at 103. On one of the interrelated claims, the plaintiff had succeeded. Id. The Court also considered the relief that the plaintiff ultimately obtained, finding that the plaintiff received largely "secondary" relief and not the "primary" relief the plaintiff sought. Id. The Court concluded that a 50% across-the-board reduction was warranted. Id. at 103–04.

In this case, plaintiffs prevailed on only one of three issues raised before the hearing officer. The first issue, whether DCPS failed to timely evaluate M.H. for special education needs in 2011, Pl. Mot., Ex. 2 at 7–9, is legally and factually distinct from the other two claims. Plaintiffs make no attempt to argue otherwise. See Pl. Opp. at 7–8. Because plaintiffs failed on this unique claim, the undersigned cannot allow plaintiffs to recover attorney's fees for time spent litigating that claim. Medina, 864 F.Supp.2d at 17.

Similarly, the third issue is largely separate from the others. There, plaintiffs claimed that M.H. was suspended for more

than ten days during the 2012–2013 school year, thus triggering DCPS' duty to conduct a manifestation determination meeting. Pl. Mot., Ex. 2 at 12–14. The factual underpinning for this claim is narrow—the entire claim is determined by the actual number of days M.H. was suspended. This factual inquiry is only tangentially related to the second claim plaintiffs raised—that DCPS violated its "child find" duty. Id. at 9–12. That second claim was based primarily on M.H.'s declining classroom behavior, his lack of academic progress, and his numerous office visits in May 2013. See id. at 12. Although the hearing officer mentioned the number of suspensions M.H. received when analyzing issue two, id. at 10–11, that number did not play a discernable role in her ultimate decision on the claim. In other words, although there are some "common" facts between claims two and three, those common facts do not lie anywhere near the "core" of the second claim. See McAllister, 21 F.Supp.2d at 103. As a result, plaintiffs cannot recover fees expended in relation to the third claim.

Nevertheless, because the facts underlying the second and third issues overlap somewhat, the undersigned cannot easily and mathematically sever the work done on each. Instead, the undersigned finds that it is more appropriate to reduce the full award amount by taking a holistic approach that looks at the claims brought and the overall relief received. Brown, 80 F.Supp.3d at 99; McAllister, 21 F.Supp.3d at 103 ("A certain amount of the work performed in any case is performed for all claims, and cannot be so easily sub-divided."). Indeed, plaintiffs' fee invoice would not equip the undersigned to sever hours devoted to particular claims even if that were desirable. See Pl. Mot., Ex. 3; Wilhite v. Dist. of Columbia, 110 F.Supp.3d 77, 88 (D.D.C.2015) (finding that the fee invoice made it "impossible to separate out

the charges for legal work related to" unsuccessful claims and rejecting DCPS' mathematical approach to reduction); Haywood v. Dist. of Columbia, Civil Action No. 12–1722 BJR/DAR, 2013 WL 5211437, at *12 (D.D.C. Aug. 23, 2013) (reducing hours by a percentage of the whole "because the undersigned cannot conclude from the invoice submitted which hours should be excluded" for being expended on unsuccessful claims).

When viewed through the lens of the relief obtained, plaintiffs fare much better: they achieved the most important assessments they requested, they were given the right to request independent evaluations, and the hearing officer set a tight timeline for DCPS to review M.H.'s needs. See Pl. Mot., Ex. 2 at 16. This case is unlike other cases involving larger reductions, such as Middleton, in which the Court imposed a 65% reduction because the plaintiff was awarded less than one-fifth of the relief requested. Middleton v. Dist. of Columbia, Civil Action No. 14–01151 CRC/DAR, 2015 WL 5154944, at *2 (D.D.C. Aug. 15, 2015) (plaintiff requested 545 hours of compensatory education and was awarded only 103 hours). In this case, by contrast, plaintiffs received a large measure of the relief sought despite succeeding on only one claim. Indeed, the only major relief plaintiffs did not obtain were the speech-language and occupational therapy assessments they had requested. Moreover, the claim on which plaintiffs did succeed was by far the most important claim asserted. On the whole, then, although plaintiffs achieved mathematical success of only one-third, a universal assessment of their victory reveals that plaintiffs obtained most of the "primary" relief they sought. McAllister, 21 F.Supp.3d at 103; see also Green v. Dist. of Columbia, 102 F.Supp.3d 15, 22 (D.D.C.2015) (reducing fees by 35% where plaintiff succeeded in

improving the student's IEP, which was the "the core of its litigation effort," although plaintiff failed to obtain other important relief, including a specialized school placement and autism diagnosis).

"Having found a reduction is appropriate, the court has discretion to determine the method and amount of reduction." Wilhite, 110 F.Supp.3d at 87 (citing Hensley, 461 U.S. at 436–37, 103 S.Ct. 1933). As should be clear by now, there is no formula for doing so. Id. Instead, viewing plaintiffs' claims and relief obtained as a whole, the undersigned concludes that a 35% reduction in the final fee award is appropriate. This reduction accounts for the hours devoted to plaintiffs' unsuccessful claims, while acknowledging that plaintiffs still managed to receive most of the relief they sought. Accordingly, the undersigned recommends that the Court reduce plaintiffs' requested fee by 35% to account for plaintiffs' limited degree of success in the administrative proceedings.

## C. Plaintiffs' Award of Fees and Costs

Applying a 35% reduction for plaintiffs' limited success to plaintiffs' claimed fee of $18,096.05, the undersigned arrives at an award of attorney's fees in the amount of $11,762.43. Plaintiffs should recover an additional $63.48 in costs.[10] Thus, the undersigned recommends that the total amount of plaintiffs' award be $11,825.91.

## CONCLUSION

For the reasons stated above, the undersigned recommends that the Court grant in part and deny in part plaintiffs' motion for summary judgment and grant in part and deny in part defendant's motion for summary judgment.

The parties are hereby advised that failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting such findings and recommendations. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Date: February 17, 2016

---

**10.** Defendant claims that it objects to plaintiffs' costs as ambiguous, yet simultaneously recommends that the Court enter judgment for the full amount of costs. Def. Mot. at 11 n.5. In its reply, defendant reiterates its request that full costs be awarded. Def. Reply at 11. The undersigned finds that defendant's "objection," not plaintiffs' claimed costs, is ambiguous, and declines to reduce plaintiffs' costs based on defendant's mere hint of an argument on this issue.